120 211
121 269
120 211
s79NW 204
129 4341
120 211
146 1 74

JONES *v.* PREFERRED BANKERS' LIFE ASSURANCE CO.

1. LIFE INSURANCE—NONPAYMENT OF ASSESSMENT—WAIVER.

The secretary of an insurance company, who was its managing officer, informed an insured, who was delinquent in payment of an assessment, and desired to pay the same and be reinstated, that he would have to furnish a health certificate from the company's physician, for which he provided the insured with proper blanks, which were properly executed and returned to the secretary. *Held,* that a forfeiture for nonpayment was waived.

2. SAME—AVOIDANCE OF WAIVER.

The waiver could not be avoided by the secretary's procuring from the physician, without the knowledge of the insured, a supplemental statement that the insured's heart action was somewhat irregular, and he could not recommend him as a good risk.

3. SAME—CUSTOM—STATEMENTS OF DECEDENT.

In an action by the beneficiary in a life-insurance certificate, where a forfeiture for the nonpayment of an assessment is set up in defense, and the plaintiff claims that such defense was waived by the company in accord with its settled custom to reinstate delinquent members in good health, a statement of the deceased in a talk with the secretary of the company, tending to show the deceased's knowledge of the custom, may be shown by witnesses who overheard it.

4. SAME—ESTOPPEL.

Where it is the custom of an insurance company to accept payment of delinquent assessments if members are in good health, it is estopped to claim a forfeiture if a member, relying on the custom, fails to pay an assessment within the time required, and is in good health when he offers payment.

5. SAME—INSTRUCTIONS—READING TESTIMONY TO JURY.

For the court to read to the jury in his instructions, in an action on a life-insurance certificate, the testimony of one of defendant's witnesses, on which the question of waiver of a forfeiture pleaded in defense mainly depends, does not give it such undue prominence as to require the reversal of a judgment for plaintiff.

6. SAME—ASSESSMENTS—TENDER—WHEN NOT REQUIRED.

Where an insurance company claims a forfeiture of an insurance certificate for nonpayment of assessments, and refuses absolutely to receive such assessments when payment is offered, the holder is not required actually to produce and tender the money in order to protect his rights.

7. SAME—PHYSICIAN'S TESTIMONY—PRIVILEGE.

An insurance certificate provided that it should be void if any of the answers in the application were untrue. The application contained the representation that the applicant had not consulted a physician except for la grippe, when he was attended by a specified physician. Upon the trial of an action on the policy, the physician was called as a witness for defendant, and was asked if he had treated the applicant for any disease of the heart. It appeared that any information possessed by the witness as to the insured's condition was acquired by observation, and from the latter's statements, while witness was acting as his physician. *Held*, that the question was properly excluded, in view of 2 How. Stat. § 7516, rendering inadmissible the testimony of physicians as to information acquired in attending patients, necessary to enable them to prescribe.

8. SAME—LAPSE—REINSTATEMENT.

Where an insured, whose certificate of insurance has lapsed for nonpayment of an assessment, does all that the company requires to procure his reinstatement, and reinstatement is then refused, he may rest there upon his rights, and need not apply at once to the courts for the relief desired.

Error to Ingham; Person, J. Submitted January 6, 1899. Decided May 23, 1899.

*Assumpsit* by Lucy Jones against the Preferred Bankers' Life Assurance Company on certain insurance certificates. From a judgment for plaintiff, defendant brings error. Affirmed.

The defendant is organized under Act No. 187, Pub. Acts 1887 (3 How. Stat. § 3960c *et seq.*), and acts amendatory thereof. One Owen Jones became a member of said company, January 20, 1894, receiving three certificates of insurance, for $1,000 each; his wife, the plaintiff, being the beneficiary. Under the terms of these certificates

and the by-laws of the company, assessments were made quarterly, payable at any depository bank, or at the office of the company at Lansing, on any business day during the month succeeding the notice, viz., January, April, July, and October. Mr. Jones paid his assessments at the office of the company until the March assessment, 1896, for $6.30. Notice of this assessment was dated March 16th, was received by Mr. Jones, and was payable any time during the month of April. He failed to pay. A few days after the time for payment had expired, Mr. Jones applied to the secretary of the company, at his office, and offered to pay the premium. Mr. Randall, the secretary, informed him that he would have to furnish a health certificate. A blank health certificate was furnished him. He went to Dr. Hagadorn, the physician for the company, by the direction of the secretary, obtained the certificate, and returned it to the company. This certificate was signed by Mr. Jones, stated that he was in good health, and closed as follows:

"This statement is given as a part of the consideration for a certificate of reinstatement, which shall be void if the above representation be untrue; and I agree to furnish, at my own expense, a medical examination, if required by said assurance company, and submit to the action of said board of trustees on the question of my reinstatement to membership."

Dr. Hagadorn attached his certificate, saying: "I believe the same to be correct in every particular, and that he is now in perfect health." Some time between one and four weeks afterwards Mr. Randall took this certificate to Dr. Hagadorn, and, as the doctor testified, "asked me if I could not put something else on there, so it would help him out somewhat." At Randall's request, the doctor added, underneath his certificate and signature, the following: "Heart action very rapid, and somewhat irregular. Cannot recommend him as a good risk." This statement was unsigned. Mr. Jones knew nothing about it. Mr. Randall testified that he had heard that Mr. Jones was not

in good health, and he declined to reinstate him on account of this information. Whether the matter was ever placed before the board of trustees does not appear. It is perhaps a fair inference that it was not. At any rate, there is no evidence of any action by them. A witness, Thomas Smith, testified that he heard a conversation in May between Mr. Randall and Mr. Jones, which he relates as follows:

"Mr. Jones wanted him [Randall] to accept his money for the insurance, and Mr. Randall would not do it, and Mr. Jones said he ought to be used the same as the others were used,— the other members."

Mr. Jones was not reinstated, and defendant gave testimony tending to show statements made by him that he had abandoned the insurance in this company. He took no other steps to secure his reinstatement, and died January 12, 1897. Soon after his death, plaintiff, through her attorney, wrote to defendant, requesting it to furnish blank proofs of death. The defendant refused this request, stating "that at the time of his death he was not a member of the company." Thereupon this suit was instituted to recover upon these three certificates, claiming that they were in force at the time of Mr. Jones' death.

Three defenses were interposed:

*First.* That by the failure to pay the assessment in April, 1896, his rights as a member and his certificates became forfeited and lapsed.

*Second.* That the statements in his application were untrue, by reason of which the policies were void.

*Third.* That he became intemperate prior to his death.

The provisions of the certificates in regard to forfeiture were:

(1) That upon failure to pay any assessment for death loss, or annual dues, his guaranty deposit ($21) shall be forfeited, and his membership shall thereupon cease.

(2) They shall become null and void if the member is or shall become habitually intemperate in the use of intoxicating liquors.

(3) If such certificates shall have been obtained or continued contrary to, or in violation of, the articles of association, by-laws, rules, or regulations of this assurance company.

The provision in regard to forfeiture and reinstatement is section 2 of article 2 of the by-laws, and reads as follows:

"Upon the failure of any member to pay his assessments or annual dues within the time provided by the by-laws, his membership shall be forfeited, and his right to any share or interest in the funds or property of this assurance company shall cease absolutely at the expiration of the time stipulated in which such payments are required to be made: *Provided*, however, that the board of trustees may reinstate delinquent members on such terms as to them may be deemed just and equitable."

The case was submitted to the jury upon the theory that the forfeiture for nonpayment of dues was waived, and upon this theory verdict and judgment went for the plaintiff.

*Frank E. Robson*, for appellant.

*L. B. & H. M. Gardner*, for appellee.

GRANT, C. J. (*after stating the facts*). 1. It is contended by counsel for the defendant that there is no dispute on the testimony; that the policies were forfeited by the failure of Mr. Jones to pay his assessments in April; that the company had a right to refuse to reinstate him, if in their judgment he had become impaired as an insurance risk; that their action, in the absence of fraud, was final; that there was no waiver by reason of the statements made by any officer of the company; and that, therefore, the court should have directed a verdict for the defendant. This presents the principal question in the case. Mr. Randall was the managing officer of the company, and appears to have been intrusted with the full management of its business. The office was at Lansing, and under his control, and he resided there. If it be conceded that Mr.

Jones' policies had become forfeited by the nonpayment of these assessments, the authorities are quite uniform that this forfeiture might be waived.   The law does not favor forfeitures, in fact, abhors them, and will avoid them whenever any reasonable ground can be found for so doing. *Hartford, etc., Ins. Co.* v. *Unsell*, 144 U. S. 439, and authorities there cited.   It is undisputed that Mr. Randall informed Mr. Jones, within a few days after the time limited for payment, that he would have to furnish a health certificate from the physician of the company, and that he gave Jones such a certificate to be filled out.   This he did, and the certificate, in due form, was given to the company, through Mr. Randall.   This was a waiver of the failure to pay, and entitled Mr. Jones to reinstatement.   This action of the company was not avoided by the subsequent act of Mr. Randall in taking the certificate to the physician, and inducing him to make the indorsement thereon which he did.   *Miesell* v. *Insurance Co.*, 76 N. Y. 115; *Jackson* v. *Relief Ass'n*, 78 Wis. 463.   The learned counsel for the defendant argues that there is nothing in the testimony to indicate that Mr. Jones was informed that his payment would be accepted after maturity if he were in good health.   We think it a fair inference from the testimony that it was the understanding between Mr. Jones and Mr. Randall that the only thing required for him to do, in order to be reinstated, was the procurement of this certificate and the payment of his money.   It was in accordance with the usage of the defendant.   It is not necessary that there be an express waiver; it may be implied from circumstances. *Mobile Life Ins. Co.* v. *Pruett*, 74 Ala. 487, and authorities there cited.

2. While it is true that Mr. Jones paid all his assessments, except this last, at the office of the company, it is established by the testimony of Mr. Randall, not only that he was in the habit of collecting delinquent assessments both with and without certificates of health, but that he told Mr. Jones that the company undertook to go and see

its members who lived here at Lansing, upon the street, that he could get at handily, and collect their assessments. This was in reply to a question from Mr. Jones asking where he should make his payments. Randall had then collected his membership .fee. Besides, the statement made by Mr. Jones to Mr. Randall, which the latter did not at the time deny, that "he [Jones] was entitled to the same treatment as other members," is evidence tending to show that Jones understood this method of doing business. It is urged that this statement of Mr. Jones was hearsay, made in his own interest, and against the interest of the defendant, and after the controversy had arisen. The conversation took place while Mr. Jones was insisting on his rights, and referred to the custom testified to by Mr. Randall. We think it was legitimate evidence to show knowledge on the part of Mr. Jones of the custom. In our opinion, there was enough in the case to go to the jury upon the question of waiver, and to justify the conclusion of the jury that Mr. Jones acted upon it. Upon this point the court instructed the jury as follows:

"Now, if you find that the language and actions of this company, through Mr. Randall, the head of its executive management, clearly indicated on the part of the society that it would not take an advantage of the default of the member here situated as Mr. Jones was, if he did not pay within the 30 days, but that it would accept his payment after that time, providing he were in good health, and if, after the expiration of this month of April, he was in good health, and Mr. Jones knew of this, and relied upon it, and believed it, and was honest in it, the company is estopped from setting up the forfeiture. If the company's conduct was not such as to fairly indicate an intention so to do, but was merely the extension of favors here and there, then it would not be an estoppel. But if the conduct was such as to give people — give Mr. Jones — to understand, as I said, that he might pay after the 30 days, and it would be accepted if he was in good health, then the company is estopped, if he honestly believed that, and acted upon it, providing he was in good health at the expiration of that 30 days, and during the time following, when the negotiations took place between the parties."

This instruction is fully sustained by the authorities. Nibl. Acc. Ins. & Ben. Soc. § 299; 2 Bac. Ben. Soc. §§ 361, 433; *Loughridge* v. *Endowment Ass'n*, 84 Iowa, 141; *Helme* v. *Insurance Co.*, 61 Pa. St. 109 (100 Am. Dec. 621).

3. It is urged that undue prominence was given to the testimony of Mr. Randall, which the court in its instructions read to the jury. We think not. The question of waiver depended mainly upon the testimony of Mr. Randall, and, under the circumstances, we do not think that such undue prominence was given to it as to justify a reversal of the case upon this ground.

4. Error is assigned upon the statement made in the instructions to the jury, viz., that they must determine "whether the probabilities are that he [Jones] knew it." The court in this portion of the instructions was referring to this question of waiver. That expression was used in the following connection:

"The plaintiff in this case asserts that the forfeiture of the policy alleged and insisted upon by the defendant has been waived by it, and that it is now estopped to assert it as against the plaintiff. The burden of proof to sustain such waiver rests upon the plaintiff. I have told you that, in order to create an estoppel as against this company and in favor of Owen Jones, under the claim of the plaintiff herein, it must appear that there has been such a course of dealing between Mr. Jones himself and the assurance company, and between the assurance company and others here in the city, known to Mr. Jones, that Owen Jones was led to believe, and had a right to believe, that if he failed to make his payment in April, 1896, it would be accepted thereafter, or that he would be reinstated upon the payment of his assessment at some date after the maturity of the date of payment, and that, in omitting to make this payment, he did rely upon such a course of dealing. Now, I charge you, gentlemen, further, Mr. Jones not being here to tell for himself what he relied upon or what he knew, that you must determine that from all the evidence in the case, from the conversations between him and Mr. Randall, from the length of time that he was here, the extent of the company's con-

duct as detailed by Mr. Randall, the extent of the district that defendant went over, and from all the circumstances, what Mr. Jones did and said, so far as the evidence discloses it, you are to determine from that whether Mr. Jones did know about this course on the part of the company, whether the probabilities are that he knew it, and you believe that he knew it from the evidence, and whether he relied upon it, and whether he was honest in that reliance."

The court was dealing with a case where the party with whom the transaction was had was dead, and could not speak. The jury, therefore, were charged with the duty to determine the question of waiver from the conduct of the parties, the deceased's knowledge of the method of business, and the actual facts of the transaction. The charge, taken as a whole, cannot be construed to have turned the jury loose in the field of speculation, and to have permitted them to find a verdict without any substantial evidence.

5. The court instructed the jury that, if Mr. Randall refused to receive the assessments from Mr. Jones upon his offer to pay, no actual production of the money was necessary. We think the instruction correct. Where the company absolutely denies liability, a tender would be useless, and the law does not require useless things to be done.

6. Mr. Jones, in his application, was asked the questions:

" *Q.* Are you now in good health?
" *A.* Yes.
" *Q.* Do you usually enjoy good health?
" *A.* Yes.
" *Q.* Who is your physician?
" *A.* Dr. Hayden.     *     *     *
" *Q.* Have you ever had any serious illness or injury, and, if so, when and of what nature?
" *A.* La grippe slightly, several times.     *     *     *
" *Q.* Have you had any sickness in the last five years?
" *A.* Nothing more than la grippe, or cold.
" *Q.* Give name and residence of the attending physician.

"*A.* Dr. Hayden.

"*Q.* How long since you consulted a physician?

"*A.* Four weeks ago.

"*Q.* For what disease?

"*A.* La grippe, or cold.

"*Q.* Give the name and residence of such physician.

"*A.* Dr. Hayden.   *   *   *

"*Q.* Have you ever had any of the following diseases:
*   *   *   Disease of the heart?

"*A.* No."

The policy provided that, if any of these answers were untrue, the policy should become null and void. Dr. Hayden was called as a witness for the defendant, and, after testifying that he had been consulted by Mr. Jones for la grippe, he was asked: "Were you consulted by Mr. Jones during this period for any other disease than la grippe?" Objection was made to this as incompetent, under 2 How. Stat. § 7516. The doctor also testified that all the information he had pertaining to any alleged complaints of Mr. Jones was acquired during the relation of physician and patient, and that he had no information pertaining to his condition aside from what he obtained by observation and from his statements while acting as his physician. Dr. Hayden was also asked if he treated Mr. Jones at any time for any disease of the heart. These questions were objected to as incompetent under the statute, and the objection sustained. The statute is as follows:

"No person duly authorized to practice physic or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon."

It is sought to sustain the admission of this testimony under *Brown* v. *Insurance Co.*, 65 Mich. 306 (8 Am. St. Rep. 894). In that case the deceased had taken out two policies of insurance, written application being made for each. In her first application she stated that some nine

or ten years before she had had typhoid fever, and that her attending physician was Dr. Henderson. In her second application she stated that she had never been sick. In that case the majority of the court was of the opinion that Dr. Henderson might testify to the fact that he had treated her for typhoid fever, and that it did not come within the prohibition of the statute. That decision must be limited to the facts in that case. Mr. Jones had made no other application, and had made no reference to Dr. Hayden as having treated him for a specific disease, aside from that stated in the application for membership in the defendant. We think this case clearly within the prohibition of the statute, and the questions were properly excluded.

7. The court was requested to give the following instruction:

"If the jury find that Owen Jones made no payment of the assessment of April, 1896, and made no payment of this assessment afterwards during his lifetime, and stated to other persons that he had dropped it or would pay no more assessments upon it, and took no steps to be reinstated other than to make an application, and took no further steps to keep his membership good or to keep the certificates in force, then I charge you that he had abandoned the certificates and his membership, and the plaintiff cannot recover, and your judgment should be for the defendant."

This was refused. That one may acquiesce in a forfeiture is undoubtedly true. The request assumed certain things to constitute of themselves an abandonment of the policies and acquiescence in the forfeiture. This request would permit a jury to consider, as evidence of such acquiescence, the fact that he had made no payment of the assessments, leaving out of consideration the fact that the company absolutely declined to accept and that he had offered to pay. It also would permit them to find that the failure to take steps to keep his membership good or to be reinstated was evidence of such abandonment and acquiescence. If Mr. Jones had done all that the law

required of him to procure his reinstatement, he had a right to rest there upon his rights. The law did not compel him to at once apply to the courts for reinstatement, or to have the policies adjudged to be alive. *Miesell* v. *Insurance Co., supra.* The request, as framed, was properly refused.

Judgment affirmed.

MONTGOMERY, HOOKER, and LONG, JJ., concurred. MOORE, J., did not sit.