## FYE v. CHAPIN.

1. INJURY BY DOG—DOUBLE DAMAGES—EQUITY POWERS—CONSTITUTIONAL LAW.

2 Comp. Laws 1897, § 5593, which provides that, upon the trial of an action for injuries by a dog, "if it shall appear to the satisfaction of the court, by the evidence, that the defendant is justly liable for the damages complained of, * * * the court shall render judgment against such defendant for double the amount of damages proved," is not unconstitutional as conferring chancery powers on the circuit judge; it not being contemplated that the court shall act independently of the jury in determining the amount of damages, but merely that it, having determined through its instrumentalities, which include the jury, the damages suffered, may render judgment for double the amount.

2. SAME—CHILDREN—NEGLIGENCE OF PARENTS.

In an action by a child against the keeper of a dog for personal injuries caused by the dog, the negligence of plaintiff's parents in admitting the dog to their house cannot be imputed to the plaintiff.

3. SAME.

The keeper of a dog is liable under 2 Comp. Laws 1897, § 5593, for injuries done by it to a child, notwithstanding the dog was taken by servants out of the keeper's inclosure, and into the child's presence, in direct disobedience of the keeper's orders.

4. SAME—DECLARATION—AVERMENT OF PERMANENT INJURY—PROOF OF EPILEPSY.

In an action for injuries caused by a dog, the declaration, by the first count, averred that plaintiff was injured for life, and her nervous system permanently injured by the shock and fright; that by means thereof she became and was sick, and suffered great bodily pain and mental anguish, and still continues to suffer great pain, and will continue to suffer such pain. The second count alleged that plaintiff, theretofore a sound and healthy person, became and was and is now sick, and permanently injured, and her whole nervous system permanently injured, and her mental faculties ruined, and her health permanently injured, and her blood poisoned and contaminated. *Held*, to authorize proof of resulting epilepsy.

121  675
123    8

121  675
s80NW 797
D179US 127
D45Led 119
D21S0   71

121  675
134  4520

121  675
138  2  4

121  675
145  1368

121  675
157  0 45

5. PERSONAL INJURIES—EXPERT TESTIMONY—HYPOTHETICAL QUES-
   TIONS.
   Plaintiff in an action for personal injuries, claimed to have
   resulted in epilepsy, was entitled to have experts answer
   hypothetical questions based on a description of her appear-
   ance as shown by her own evidence, notwithstanding evidence
   for defendant ascribed her condition to indigestion, particu-
   larly as there was testimony raising a question of credibility.

6. SAME — EXCESSIVE VERDICT — APPEAL—REMITTANCE OF EXCESS.
   Where, in an action for injuries by a dog, the jury, notwith-
   standing the evidence on the question of the permanence of
   the injuries was not clear and convincing, resolved every doubt
   against defendant, and returned a verdict for $10,000, which
   was doubled by the court in entering judgment, the Supreme
   Court, on appeal, required one-half of the judgment to be re-
   mitted as a condition to affirmance.

Error to Kalamazoo; Buck, J. Submitted June 6,
1899. Decided November 14, 1899.

Case by Ruth I. Fye, an infant, by Henry W. Fye,
her next friend, against Charles A. Chapin, for personal
injuries. From a judgment for plaintiff, defendant brings
error. Affirmed conditionally.

*N. H. Stewart* and *Edward Bacon*, for appellant.

*Gore & Harvey* (*Frank E. Knappen*, of counsel),
for appellee.

MONTGOMERY, J. The defendant was the owner of a
large St. Bernard dog. On the 16th of December, 1897,
two servant girls in defendant's employ called on the
mother of the plaintiff, accompanied by the dog. The
dog was admitted with them into the house, and, while
the two callers and Mr. and Mrs. Fye engaged in conver-
sation, the plaintiff, a child 4 years and 4 months of age,
was seated on the floor of the adjoining room, playing
with her dolls. She was suddenly assaulted by the dog in
a very ferocious manner, and bitten on the face and on the
scalp. The scalp was torn loose, resulting in a consider-
able loss of blood, and, it is claimed, permanent disfigure-

ment.   The plaintiff also gave testimony tending to show
that extreme nervousness followed the shock and fright,
and that in the following April she had spasms, which
were epileptic, and also offered medical testimony tending
to show that epilepsy is incurable, and that the most prob-
able cause of the attack in April was the attack of the
dog; that extreme fright or the injury to the scalp might
either result in epilepsy.    The defendant's testimony
tended to show that the spasms were traceable to causes
entirely distinct from the injury by defendant's dog.
The jury returned a verdict for $10,000, and judgment
for double this amount was entered by the court.    The
defendant brings error, assigning error on no less than 98
rulings of the trial judge.    The questions which are of
sufficient importance to merit special discussion are not,
however, numerous, and, while none have escaped exam-
ination, we shall pass over such as are not specially dis-
cussed with the statement that we find no error in the
rulings of the learned judge in respect to them.

1. The action is based on section 2 of Act No. 161,
Laws 1850, being section 5593, 2 Comp. Laws 1897, which
reads as follows:

"If any dog shall have killed or assisted in killing,
wounding, or worrying any sheep, lamb, swine, cattle, or
other domestic animal, or that shall assault or bite or
otherwise injure any person while traveling the highway,
or out of the inclosure of the owner or keeper of such dog,
such owner or keeper shall be liable to the owner of such
property or person injured in double the amount of dam-
ages sustained, to be recovered in an action of trespass or
on the case, and it shall not be necessary, in order to sus-
tain an action, to prove that the owner or keeper knew
that such dog was accustomed to do such damage or mis-
chief; and upon the trial of any cause mentioned in this
section, the plaintiff and defendant may be examined
under oath touching the matter at issue, and evidence
may be given as in other cases; and if it shall appear to
the satisfaction of the court, by the evidence, that the de-
fendant is justly liable for the damages complained of
under the provisions of this act, the court shall render
judgment against such defendant for double the amount

of damages proved, and costs of suit; but in no case shall the plaintiff recover more than five dollars costs."

It is contended that this act is unconstitutional, in that it confers upon the circuit judge power to act as a chancellor in a suit at law, in so far as he exercises the authority to double the damages. The construction which defendant's counsel give to the statute is that, before the court shall double the damages, it must appear satisfactorily to the court that the defendant is justly liable for the damages complained of, and that the judge is, by the terms of the statute, to act independently of the jury in determining the amount of damages proved. The statute has been enforced in a number of cases. *Swift* v. *Applebone*, 23 Mich. 252; *Elliott* v. *Herz*, 29 Mich. 202; *Monroe* v. *Rose*, 38 Mich. 347; *Trompen* v. *Verhage*, 54 Mich. 304; *Burnham* v. *Strother*, 66 Mich. 519. The questions now suggested have not heretofore been raised by either the court or counsel. This fact does not, of course, conclude the defendant. The presumption is strong, however, that the statute, which has been operated under for nearly half a century, has on various occasions, when it has been enforced, been scrutinized by both court and counsel, and found not open to attack. The statute is inartificially drawn, but we think it open to a construction which is not inconsistent with the proper exercise of the distinct functions which the law casts upon the judge and jury respectively. The liability is declared to be in double the damages sustained. The presumption is that those damages are to be ascertained as in ordinary cases, — if the trial be before a jury, by the jury; and by the court when the jury is dispensed with. While the latter portion of the section is more appropriate to a trial before the court without a jury, we think the word "court" may be construed to mean the court acting through all of its instrumentalities, which includes the jury, and, so construed, the act is operative. It is competent for the legislature to provide for doubling damages in this class of cases. *Trompen* v. *Verhage*, 54 Mich. 304; *Cummings*

v. *Riley*, 52 N. H. 368; *Chickering* v. *Lord*, 67 N. H.
555; *Fitzgerald* v. *Dobson*, 78 Me. 559; *Barrett* v. *Rail-
road Co.*, 3 Allen, 101.

2. The defendant asked the court to charge that, as the
plaintiff's parents had the dog in their home at the time of
the assault, and had knowledge of the nature of the dog,
they were guilty of gross negligence directly contributory to
the injury that the child received, and that for this reason
the plaintiff was not entitled to recover.   It is insisted in
this court that the negligence of the plaintiff's parents was
the proximate cause of the injury.   In the same connec-
tion it is insisted that the servant girls, in taking the dog
into the presence of plaintiff's parents, were disobeying
instructions, and that the court was in error in refusing
to charge that the reckless negligence of defendant's hired
girls in disobedience of his order could not be imputed to
him.   We think it cannot be said that the plaintiff's
parents were in any sense the keepers of this dog.   The
defendant was such keeper, and the injuries were inflicted
outside the inclosure of defendant.   He is liable, there-
fore, unless the negligence of plaintiff's parents or defend-
ant's hired girls relieves him.   The negligence of the
parents cannot be imputed to this child.   *Shippy* v. *Vil-
lage of Au Sable*, 85 Mich. 280; *Mullen* v. *City of
Owosso*, 100 Mich. 103 (23 L. R. A. 693, 43 Am. St.
Rep. 436).   At the common law, in an action against the
owner of a vicious dog, if the keeper knew of the vicious
character, he was liable for any damage done, without
further proof of negligence on his part.   The negligence
was said to consist, not in the manner of keeping and
confining the animal, but in keeping him at all.   In some
cases it is said that the owner must, at his own peril, keep
him safe from doing hurt.   See *Kelly* v. *Tilton*, 2 Abb.
Dec. 495.   In some cases the defendant has been held
liable notwithstanding the contributory negligence of the
plaintiff.   *Woolf* v. *Chalker*, 31 Conn. 130 (81 Am. Dec.
175).   A better rule is, however, stated in *Muller* v. *Mc-
Kesson*, 73 N. Y. 204 (29 Am. Rep. 123), by Chief Jus-

tice Church, which is that the owner cannot be relieved
from liability by any act of the person injured, unless it
be one from which it can be affirmed that he caused the in-
jury himself, with a full knowledge of its probable conse-
quences. If this be the rule as to the negligence of the
plaintiff at common law, certainly the negligence of a
third person cannot be held to relieve the defendant. The
effect of this statute is to extend the common law so as to
include all keepers of dogs, and to dispense with proof of
the previous knowledge of their vicious character. The
contention of defendant's counsel cannot be sustained.

3. Plaintiff's declaration contains two counts. In the
first count, after stating the injury, it is averred:

"And thereby plaintiff was greatly bruised, cut, torn,
and otherwise injured, and plaintiff's whole nervous sys-
tem was permanently injured by the shock and fright of
said assault; and thereby the plaintiff was otherwise
greatly and permanently wounded, and injured, and dis-
figured for life; and by means whereof plaintiff became
and was sick, sore, lame, and disordered, and suffered
great bodily pain and mental anguish and torture, and
still continues to suffer great pain, and the character of
said injuries is such that plaintiff will continue to suffer
great pain and inconvenience, and plaintiff was thereby
disfigured for life."

In the second count:

"The plaintiff, theretofore a sound and healthy person,
became and was, and now is, sick, sore, lacerated, lame,
and permanently disfigured and injured, and her whole
nervous system permanently injured, and her mental
faculties ruined, and her health permanently injured, and
her blood poisoned and contaminated."

It is contended that these averments are insufficient to
authorize proof of resulting epilepsy. The declaration in
each count sufficiently avers permanent injuries, and evi-
dence was offered to trace the injuries to the act com-
plained of. The question is concluded by *Johnson* v.
*McKee*, 27 Mich. 471; *Elliott* v. *Van Buren*, 33 Mich.
49 (20 Am. Rep. 668); *Keyser* v. *Railway Co.*, 66 Mich.

390; *Montgomery* v. *Railway Co.*, 103 Mich. 46 (29 L. R. A. 287).

4. Error is assigned upon rulings of the circuit judge in admitting and excluding testimony. In some cases the testimony now complained of was received without objection, and in some cases the rulings were discretionary. It is insisted that error was committed in permitting certain hypothetical questions. The questions are too lengthy to set out at length, but we have examined them, and find the questions fairly stated the case as the plaintiff had the right to contend that it was when the questions were put. Dr. Baldwin, who was called to attend the plaintiff at the time of the injury, and also when she was suffering from spasms in the following April, testified to her condition as he found it on the latter occasion, and stated that he ascribed the attack to indigestion. Defendant's counsel insist that, as this testimony indicates a cause for the attack, and as it was not considered by the expert witnesses, the testimony given by them should have been wholly excluded from the consideration of the jury; and a request along this line was preferred. The doctor was a witness for the defense. The plaintiff's witnesses had described the appearance of the plaintiff, and the testimony of the experts was based upon this description. The plaintiff had the right to have the answers stand, and to urge to the jury the claim as made out by her, particularly as there was testimony raising a question of credibility.

5. A motion for a new trial was made before the circuit judge. The same points of law were raised which we have discussed in this opinion. In addition it was contended that the verdict was excessive. The circuit judge held that, while the verdict was a large one, it was not so large as to authorize the court in finding that it was excessive. A most careful reading of the record leads us to a different conclusion. The evidence tending to show that epilepsy will result from the injury is not, to our minds, clear and convincing, although legally admissible.

It would appear that the jury resolved every doubt against the defendant, and it is by no means clear that they did not include in their verdict an award by way of punishment. A new trial will be granted, unless the plaintiff shall, within 30 days, elect to remit from the judgment $10,000. Defendant will recover costs of this court.

The other Justices concurred.