ROTH v. MUTUAL RESERVE LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. May 2, 1908.)

No. 2,692.

1. APPEAL AND ERROR—REVIEW—MATTERS REVIEWABLE—WHEN DIRECTED VERDICT IS ASKED BY BOTH PARTIES.

Where both parties request a directed verdict, the defeated party is estopped to claim that any question of fact should have been submitted to the jury, and the only questions reviewable on a writ of error are (1) whether there was any substantial evidence to support the court's finding upon the facts, and (2) whether there was any error in the application of the law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4024.]

Operation and effect of motions by both plaintiff and defendant for direction of verdict, see note to Love v. Scatcherd, 77 C. C. A. 8.]

2. SAME—SECOND REVIEW—LAW OF CASE.

Questions which were once determined by an appellate court or conceded on the hearing therein will not be considered on a second appeal or writ of error in the same case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4358–4368.]

3. INSURANCE—LIFE INSURANCE—"ABANDONMENT OF CONTRACT."

Where an insured under a life policy refused to pay an assessment made against him solely on the ground that the amount of the assessments had been increased, but without any claim that the increase was illegal, and formally notified the company that he withdrew therefrom, such action constituted an "abandonment of contract," which precluded a recovery on his policy after his death, unless some other act supervened to reinstate his claim.

4. SAME—ESTOPPEL AFFECTING RIGHT TO AVOID POLICY—FURNISHING BLANKS FOR PROOF OF DEATH.

The furnishing by a life insurance company to a beneficiary named in one of its policies of forms for making proof of the death of the insured does not estop it from asserting that the policy had lapsed and was not in force at the time of the death, where such forms were furnished at the request of the beneficiary, and were accompanied by a letter stating that it was done without prejudice to or waiver of any of the company's rights, and also stating its claim that the policy had lapsed.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

F. H. Bacon and J. E. McKeighan, for plaintiff in error.

James C. Jones (S. T. Tyng, Lon O. Hocker, and J. Lionberger Davis, on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS, District Judge.

PHILIPS, District Judge. This action was originally brought by Margaret Roth against the Mutual Reserve Fund Life Association on a policy certificate for life insurance dated January 9, 1884, issued on the life of Adam Roth, for the sum of $10,000. After the institution of suit, said Margaret died, and the present plaintiff in error was substituted. The name of the defendant, after the commencement of said suit, was changed to Mutual Reserve Life Insurance Company, which was duly substituted of record. The policy was issued and delivered in the state of Missouri, where the first and subsequent premiums were paid. The stipulations of the policy as to assessments are as follows:

"If, at such date as the board of directors of the association may from time to time fix or determine for making an assessment, the death fund is insufficient to meet existing claims by death, an assessment shall then be made upon every member whose certificate is in force at the date of the last death assessed for, and said assessment shall be made at such rates, according to the age of each member, as may be established by the said board of directors, and the net amount received from such assessment (less 25 per cent. to be set apart for the reserve fund) shall go into the death fund."

By the conditions of the certificates, the by-laws of the company are made a part of the contract. The provisions of the by-laws applicable to this case are as follows:

"Sec. 5. On the first week day of the months of February, April, June, August, October, and December of each year (or at such other dates as the board of directors may, from time to time, determine) an assessment shall be made upon the entire membership in force, at the date of the last death of the audited death claims prior thereto, for such a sum as the executive committee may deem sufficient to meet the existing claims by death, the same to be apportioned among the members, according to the age of each member.

"A member failing to receive a notice of an assessment, on the first week day of February, April, June, August, October, and December, for his share of the losses occurring during the time specified, it shall be his duty to notify the home office in writing of such fact.

"A failure to pay the assessment within 30 days from the first week day of February, April, June, August, October, and December (or within 30 days from the day of the date of such periods as may be named by the directors), shall forfeit his membership in this association, with all rights thereunder, and the certificate of membership shall be null and void."

The answer, inter alia, pleaded that an assessment, No. 106, styled "mortuary call," was levied October 2, 1889, and was not paid by Adam Roth within 30 days of the call, whereby the policy lapsed and was forfeited. It is conceded that the assured did not pay this mortuary call No. 106, although he had paid in premiums on said policy up to that time over $6,000.

On the first trial of this cause, the plaintiff recovered in the Circuit Court on the ground that the policy was subject to the non-

forfeiture law of the state of Missouri; that the net value of the policy was sufficient to carry it beyond the time of the death of Adam Roth. That judgment was reversed by this court. Mutual Reserve Life Insurance Company v. Roth, 122 Fed. 855, 59 C. C. A. 63, to which reference is here made for further statement of facts. The case being remanded for new trial, the plaintiff again asserted that the policy sued on was subject to the said nonforfeiture law of Missouri; and, second, it pleaded an estoppel, because of representations of the company, to which the court sustained a demurrer, which action of the court is not pressed here for consideration. The reply further alleged that after the death of Adam Roth, the defendant being notified thereof and requested to furnish blank proofs of death, the plaintiff furnished defendant, at an expense of $5, said proofs, and the defendant, at the time having full knowledge of the various defenses alleged in its answer, was thereby estopped from setting up said defenses. At the conclusion of the evidence both parties requested a directed verdict of the jury. The court granted the request of the defendant.

This court, when this case was here on a former writ of error, having adjudged that the defense of the nonforfeiture law of Missouri was unavailing to the plaintiff, the only questions to be decided are the defense of abandonment by Roth in his lifetime and the affirmation in the reply of an estoppel. As both parties at the conclusion of the evidence requested a directed verdict, the defeated party is estopped from asserting that any question of fact should have been submitted to the jury, as every disputed question of fact is concluded in favor of the prevailing party. The only questions open to review on this writ of error are: (1) Was there any substantial evidence to support the court's finding upon the facts? and (2) was there any error in the application of the law? U. S. v. Bishop, 125 Fed. 181, 182, 60 C. C. A. 123, and authorities cited.

The evidence clearly enough established that conformably to the by-laws of the company the board of directors made an assessment, No. 106, known as a "mortuary call," levied October 2, 1899, and notice thereof was duly published in the usual form. On the 31st day of October, 1899, the said Adam Roth gave to the defendant the following notice:

"I beg to notify you herewith of my withdrawal from your association, and respectfully refer you to my policy No.17,522."

That he intended by this to advise the defendant of his unqualified abandonment of the policy is confirmed by Gust Hoeber, who was at that time the defendant's agent at St. Louis, who testified that in February, 1899, on inquiry by the assured, he was advised that his assessment would be increased in October next, whereat Roth said that he intended to "drop his policy"; that he "would continue his policy until it was raised again, and then he would drop it." The witness further testified that afterward, in October, 1899, at the time of the mortuary call No. 106, he called upon Mr. Roth to know why he had not sent check for the assessment, when Roth in answer said:

"He would not pay any more; that he would not continue his policy; that he told me so last spring; that he had been raised again about $20, and he would not continue his policy; * * * that his wife was well provided for, and she did not need the money."

There was no claim advanced by him that there was any irregularity, or want of authority in the board of directors, in making said assessment. Indeed, neither in the petition nor the reply does the plaintiff allege that Adam Roth withdrew from the association on the ground that the demand of the company for the additional due was illegal, or that he so informed the company; but, when called upon by the local agent to pay and urged not to carry out his letter of withdrawal, he simply said he would not stand another raise—that his wife was well provided for anyhow. He did not claim, as is now asserted in argument, that there was any trust fund applicable to such payment, but placed his declinature solely on the ground that he would not stand another raise—that his family was well provided for. It is questionable whether his beneficiary can now urge other ground after his death, as the presumption should be indulged, had he urged other ground, the company might have altered its situation. See Kansas Union Life Ins. Co. v. Burman, 141 Fed. 836, 73 C. C. A. 69.

Be this as it may, the question of the regularity of the assessment and the abandonment of the policy by Adam Roth were in effect conceded on the former hearing of this case. In the opening paragraph of the opinion of Judge Thayer (122 Fed. 854, 59 C. C. A. 64) he said:

"We are of the opinion that, when the trial ended, all of the material facts in the case were practically confessed, and that the learned trial judge was right in holding that the only question involved was one of statutory construction arising upon the aforesaid statute."

And it appears from the brief of plaintiff's counsel on the former writ of error that:

"The questions of the legality of the assessment upon which it was claimed the policy was forfeited and the estoppel of the company by requiring proofs of death were determined in favor of the defendant below, and need not be considered here."

On the well-recognized rule of "the law of the case," these questions should be regarded as having passed in rem judicatam. Judge Hook, in Mutual Reserve, etc., Association v. Ferrenbach, 144 Fed. 344, 75 C. C. A. 305, 7 L. R. A. (N. S.) 1163, said:

"We will not re-examine the question when the cause again comes before us on the same facts and under the same conditions."

It is the established rule in the application of the doctrine of res judicata that:

"It is a finality as to the claim or demand in controversy concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195.

This rule applies with equal force to matters adjudged, or definitely passed upon, on appeal or writ of error, when the case again comes

before the appellate court. "It is settled in this court that whatever has been decided here upon one appeal cannot be re-examined in a subsequent appeal of the same suit. Such subsequent appeal brings up for consideration only the proceedings of the Circuit Court after the mandate of this court." Supervisors v. Kennicott, 94 U. S. 498, 24 L. Ed. 260; Clark v. Keith, 106 U. S. 464, 1 Sup. Ct. 568, 27 L. Ed. 302. Questions passed upon, and matters involved in the first appeal, become "the law of the case" on a subsequent appeal or writ of error. Guarantee Co. v. Phenix Ins. Co., 124 Fed. 170, 59 C. C. A. 376.

Laying this aside, there is no evidence in this record tending to impeach the levy of the assessment. The settled rule of law is that "it was prima facie evidence against the members of the association." Anderson v. Mutual Reserve, 171 Ill. 40, 49 N. E. 205; Bagley v. A. O. U. W., 131 Ill. 498, 22 N. E. 487; Demings v. Sup. Lodge, 131 N. Y. 522, 30 N. E. 572. In Schmidt v. Mutual Reserve Fund Life Association, 106 S. W. 1082 (decided December 17, 1907), the St. Louis Court of Appeals, per Bland, J., said:

"The calls of mortuary assessments are periodically adjusted on the esti- mated cost of insurance according to the experience of the association, and is acquiesced in among the members by taking into account the attained age of each member. It seems to us that this is right, and it certainly is authorized by the by-laws and constitution of the association, and expressly provided for in the contract of insurance itself. * * * There is no direct evidence in the record before us that call No. 96 resulted in discrimination by which Schmidt was injured, nor can the inference that the call resulted from such discrimination be drawn from the opinion and the record. On the contrary, the only evidence on the subject is to the effect that call No. 96 was the re- sult of a readjustment of the assessments by which each member was required to pay his equitable part of the death fund; and the Strauss Case (a North Carolina decision) is repudiated in Mutual Reserve Fund Life Association v. Ferrenbach, 144 Fed. 342, 75 C. C. A. 304, 7 L. R. A. (N. S.) 1163."

So in the case at bar the evidence of the actuary was to the effect that call No. 106 was regular and without discrimination.

The letter of Roth of October 31, 1899, notifying the defendant of his withdrawal from the association, was an effectual abandon- ment of the contract on his part, and bars his right of recovery, un- less some other fact has supervened to reinstate his claim. Ryan v. Association (C. C.) 96 Fed. 796; Mutual Life Ins. Co. v. Phinney, 178 U. S. 327, 345, 20 Sup. Ct. 906, 44 L. Ed. 1088; Mutual Life v. Hill, 178 U. S. 347, 20 Sup. Ct. 914, 44 L. Ed. 1097; Jones v. In- surance Co., 120 Mich. 211, 79 N. W. 204; Haydel v. Association (C. C.) 98 Fed. 200.

The plaintiff in the replication seeks to avoid the effect of this aban- donment by pleading an estoppel. It only remains to examine the evidence in support of this plea. On the 28th day of July, 1900, the beneficiary, Margaret Roth, by her attorney, wrote the defendant as follows:

"You are hereby notified that Adam Roth, insured under your policy No. 17,522, dated December 31, 1883, for $10,000, died June 20, 1900. As the beneficiary named in said policy I hereby request you to furnish blank proofs of death, and I hereby offer to furnish such proofs as you may require."

To this the defendant replied by letter on July 31, 1900, as follows:

"Dear Madam: Your favor of the 28th inst., to hand. We herewith inclose proof blanks, which we do at your request, without prejudice to or waiver of any of the rights of the association in the premises. We would further state that policy No. 17,522, issued to Adam Roth (for $10,000) lapsed for the nonpayment of assessment due October 2, 1899. If, however, you persist in making claim under said policy, the association will require the performance of all conditions precedent as provided in the contract."

The testimony on behalf of the plaintiff was that she prepared, on the blank sent her, the customary proof of death and forwarded it to the defendant, at an expense of $6.10.

The contention of plaintiff's counsel is that, by requiring proof and putting the claimant to the expense of making same, the defendant is estopped from pleading the abandonment and lapse of the policy. The letter admits of no such construction. It was simply polite to send the blank proofs, as requested by plaintiff's counsel. But, lest it might be sought to construe this act of courtesy into a recognition of the defendant's liability, it sent along with it the safeguard, "Without prejudice to or waiver of any of the rights of the association in the premises," and in addition thereto, and to advise her "further," it stated, in effect, that in no event did any liability on its part exist, because the assured had forfeited his contract of insurance by letting it lapse for nonpayment of the assessment due October 2, 1899. Read by its four corners, with the eye of common sense, with an honest mind, this letter cannot be construed into an invitation to the claimant to incur labor or expense in making out proofs, in the belief that the claim would be recognized. Any other construction of this letter would be a perversion of the language and violative of the clear intendment of the writer.

It results that the judgment of the Circuit Court must be affirmed.