SLATER *v.* SORGE.

1. PLEADING—ANIMALS—TRESPASS ON THE CASE—VICIOUS NA-
TURE—DECLARATION.

A declaration in case for personal injuries by being bitten by
a dog, alleging that defendant wrongfully, recklessly and in-
juriously owned, kept and harbored a large number of
vicious and ferocious dogs, knowing that they were accus-
tomed to bite mankind, and that one of them not being prop-
erly restrained bit plaintiff, stated a cause of action.[1]

2. ANIMALS—DOGS—KEEPER OR OWNER—PERSONAL INJURIES.

In an action for injuries inflicted by a vicious dog, evidence
that the defendant had presented the dog to his wife, that it
was kept on the premises occupied by his household, that he
returned home from Chicago at the end of each week and re-
mained over Sunday, sufficiently proves that the defendant
was the keeper of the animal.

3. SAME—VICIOUS NATURE—EVIDENCE—NEGLIGENCE.

It is not necessary to show that the dog had actually bitten
any one prior to plaintiff's injury.

4. EVIDENCE—PRIVILEGE—PHYSICIANS.

By calling to the stand one physician who treated plaintiff for

[1] Liability of owner for injuries by animals to person coming
upon master's premises, see note in 14 L. R. A. 196.

a dog bite and by testifying that another physician treated him previously for the same injury, plaintiff did not waive his privilege to object to the testimony of the other physician called as a witness by defendant as to the nature of plaintiff's injuries.

Error to Berrien; Coolidge, J. Submitted February 28, 1911. (Docket No. 19.) Decided June 2, 1911.

Case by James B. Slater against Adolph Sorge for negligently keeping a vicious dog. Judgment for plaintiff. Defendant brings error. Affirmed.

*Stratton & Evans*, for appellant.

*George M. Valentine* and *Cady & Andrews*, for appellee.

BROOKE, J. Plaintiff recovered a judgment against defendant for $200 as damages for injuries alleged to have been sustained by him resulting from the bite of a vicious bulldog. Defendant brings the case to this court for review. There are 102 assignments of error raising the following questions:

(1) Does the declaration state a cause of action?
(2) Was the defendant either owner or keeper of the dog?
(3) Was the dog vicious—*i. e.*, did he have a propensity to bite mankind—and did defendant have notice that the dog was vicious?
(4) Was Dr. Taber's testimony privileged?
(5) Is mental anguish, suffered from a contemplation of what merely might occur, an element of the damages?
(6) Errors in the admission of testimony. Errors in the refusal of defendant's requests. Error in trial court's general charge.

Plaintiff, a machinist by trade, was sent by his employer, a Mr. Duncan, to the house occupied by defendant and his family, to fit a number of keys. While passing from one room to another in the house, he claims to have been attacked by the dog and bitten in the left hand.

It is urged by the defendant that the declaration is fatally defective in that there is no averment that the bulldog had a propensity to bite mankind. The declaration is in part as follows:

" For that whereas the defendant at the time of the injuries to the plaintiff hereinafter mentioned, and for a long time prior thereto, to wit, one year, wrongfully, recklessly, and injuriously owned, kept, and harbored a large number of vicious and ferocious dogs at the premises of the defendant in the city of St. Joseph in said county of Berrien, he, the defendant, then and there knowing that said dogs were used and accustomed to attack and bite mankind, and knowing that it was dangerous and improper to allow said dogs to be or remain unconfined and not properly secured. Yet the said defendant while he kept, owned and harbored the said dogs as aforesaid, to wit, on June 4, 1909, at the said city of St. Joseph, wrongfully, carelessly, recklessly, and improperly suffered said dogs to go at large, unconfined and unsecured, and without taking due and proper precautions or any precautions, to secure or confine the said dogs, or to prevent them from attacking and biting the plaintiff. Plaintiff avers that on the day aforesaid, one of the said dogs, the same being a ferocious and vicious bulldog, did then and there, and while the plaintiff was lawfully and peaceably on the premises of the said defendant in the performance of certain work and labor on said premises by the consent and invitation of defendant, did attack, bite, wound and injure the plaintiff, and then and there seize, bite and lacerate the left hand of him the plaintiff," etc.

The declaration was sufficient. *Brooks* v. *Taylor*, 65 Mich. 208 (31 N. W. 837), and cases there cited and discussed.

Was defendant either the owner or keeper of the dog? It appears from the record that Mrs. Sorge, wife of defendant, owned the dog, it having been presented to her by her husband when a pup; that it was fed and cared for by Mrs. Sorge's sister. Defendant himself appears to be engaged in business in Chicago, coming home on Friday or Saturday of each week and remaining until Monday. The household consisted of himself, his wife, his

wife's mother and sister.   While there is no evidence in the record that defendant owned the premises, we think there is evidence that he occupied them in such manner as his business permitted.   The husband is usually considered the head of the family, and, in the absence of proof to the contrary, his residence at each week end, being shown by the record, was such occupancy as warranted the charge of the court that in law he was the keeper of the dog.   *Burnham* v. *Strother*, 66 Mich. 519 (33 N. W. 410); *Fye* v. *Chapin*, 121 Mich. 675 (80 N. W. 797); *Jenkinson* v. *Coggins*, 123 Mich. 7 (81 N. W. 974).

Upon the question of the vicious character of the dog, defendant's counsel stated:

"Our position is that they must show that the dog has bitten some one.   Nothing short of a dog bite proves the vicious character of the dog.   In other words, every dog is entitled to one bite, that is my understanding of the law, and that bite must be a good one."

We are of opinion that this statement of counsel does not correctly define the law upon the question.

In *Emmons* v. *Stevane*, 77 N. J. Law, 570 (73 Atl. 544, 24 L. R. A. [N. S.] 458), the court said:

" It is not necessary that the same injury should have actually been committed by the animal to the knowledge of its owner, but knowledge by the owner that the disposition of the animal is such that it is likely to commit a similar injury to that complained of, is sufficient to maintain the action.   *Curtis* v. *Mills*, 5 Car. & P. 489; [1] Thomp. Com. Negl. § 872."

See, also, note to this case reported 24 L. R. A. [N. S.] 460.

In *Kennett* v. *Engle*, 105 Mich. 693 (63 N. W. 1009), Mr. Justice MONTGOMERY, speaking for the court, said:

" It is undoubtedly the law—and the charge of the court so laid it down—that, in addition to the facts of the injury to the plaintiff from the bite of the dog, it was incumbent upon the plaintiff to prove that the dog had on previous occasions manifested a vicious disposition, indicat-

ing a disposition to bite mankind, and that the defendant had knowledge or notice of the fact."

Defendant contends that there was not sufficient evidence introduced by plaintiff to warrant the jury in finding, either that the dog had previously exhibited a disposition to bite mankind, or that defendant had knowledge or notice of that fact if it was a fact. We think there was testimony to go to the jury upon each issue.

Was Dr. Taber's testimony privileged? On direct examination plaintiff testified:

"I caught a car and came over to Dr. Taber's office in Benton Harbor. I showed him my hand and walked the floor and halls until he got to it. He treated the hand; put medicine on. He gave me a bandage, and put some stuff on it. * * * I went to Dr. Taber's again, next day. He saw it the day of the injury and the next day, and the following Sunday—three days in succession."

Plaintiff described his injury as consisting of three wounds, two of which were on the back of his hand, the third on the outside of his index finger. He further testified that after Dr. Taber quit treating his hand, it was treated by Dr. Taylor, and he offered Dr. Taylor as a witness who described the condition of plaintiff's hand at the time he saw it and his method of treatment. Defendant offered Dr. Taber as a witness. Plaintiff objected to the testimony upon the ground that it was privileged under the statute. Section 10181, 3 Comp. Laws. The testimony was excluded, and the following colloquy occurred:

"*The Court:* Suppose you proposed to show by the physician that he didn't treat him for the wound but treated him for the colic, I think you can show it, but that is not the case here.

"*Mr. Stratton:* (attorney for the defendant): We propose to take the position you state; we propose to show that Dr. Taber did treat him for the colic, but that is not the right way to say it. We propose to show that he did not treat him for three wounds; that he did treat him for one scratch, which is the same thing as the colic. * * *

"*The Court:* My opinion is you can show the doctor

166 MICH.—12.

treated this man professionally and the date of the visits, but not the nature of the disease, because it is a matter which must come to the physician from something said by the patient.  *  *  *

"*Mr. Stratton:* The bars have been let down by Dr. Taber's (Taylor's) testimony. The plaintiff has permitted one physician to go on the stand and testify to his injury and condition, treatment, and so on.  *  *  *

"*The Court:* He would let down the bars as far as Dr. Taylor is concerned, but not as far as another witness is concerned. If you can go into the nature of the disease you can go into the whole treatment and draw out just what the doctor was treating him for this week, next week, and there might be a complication of diseases and the doctor can testify to all of them, and the statute shuts out anything of that kind."

Mr. Wigmore, in his admirable work on Evidence, in vol. 4, § 2390, says:

"To call a physician as a witness to one's physical condition is a waiver of the privilege as to the knowledge acquired by other physicians of the same condition. This is generally not conceded in the judicial rulings; but it cannot be escaped, if regard is had to the foundation of the privilege."

Among the cases cited by the author as against the principle laid down in the text is *Dotton* v. *Albion Common Council*, 57 Mich. 575 (24 N. W. 786), where Mr. Justice COOLEY said:

"The defense undertook to show that the plaintiff, instead of being healthy before, was afflicted with chronic ailments, and for this purpose they called two physicians who testified that they attended upon her professionally, and were able to tell whether her constitutional health was impaired before the time of the alleged injury. They were then asked to state whether it was impaired in fact; but having stated, in response to an inquiry by the court, that such information as they had on that subject was obtained professionally, while in attendance upon the plaintiff as her physician, and was necessary to enable them to prescribe for her, the proposed evidence was excluded. It is said that this was error, because the plaintiff waived her privilege to have the seal of professional

confidence preserved unbroken when she put her own physician upon the stand to testify to her condition. Doubtless she did so as to him to the extent to which she carried his examination; but it does not appear that he testified to any professional knowledge acquired in a relation of confidence, previous to the injury; and a waiver of her privilege in his case to permit him to disclose what he learned of her condition at that time could be no waiver of a similar privilege in the case of others relating to other occasions. If the other physicians had been called by her and partial examination gone into on her behalf, it would have been different; but, as the case stood, there seems to have been no error in excluding their evidence "—citing cases.

This case should control, unless the fact that plaintiff himself had testified as to the treatment by Dr. Taber, of the identical injury for which suit was brought, should be held to be such a waiver of the privilege conferred by the statute as would permit Dr. Taber to testify. Upon this point, defendant cites the case of *Lane* v. *Boicourt*, 128 Ind. 420 (27 N. E. 1111, 25 Am. St. Rep. 442).

The weight of authority, however, seems to be against the defendant's position. *Williams* v. *Johnson*, 112 Ind. 273 (13 N. E. 872); *McConnell* v. *City of Osage*, 80 Iowa, 293 (45 N. W. 550, 8 L. R. A. 778); *Burgess* v. *Drug Co.*, 114 Iowa, 275 (86 N. W. 307, 54 L. R. A. 364, 89 Am. St. Rep. 359); *Green* v. *Town of Nebagamain*, 113 Wis. 508 (89 N. W. 520). See, also, Chamberlayne's Best on Evidence (1908), p. 449, note (c); *Brown* v. *Insurance Co.*, 65 Mich. 306 (32 N. W. 610, 8 Am. St. Rep. 894); *Briesenmeister* v. *Knights of Pythias*, 81 Mich. 525 (45 N. W. 977); *Jones* v. *Assurance Co.*, 120 Mich. 211 (79 N. W. 204); *Perry* v. *Insurance Co.*, 143 Mich. 290 (106 N. W. 860). While this court has said in *Campau* v. *North*, 39 Mich. 606 (33 Am. Rep. 433):

"So far as practicable, the courts ought to see to it that the statute is not used as a mere guard against exposure of the untruth of a party, and that a rule intended as a shield is not turned into a sword."

The same justice in the same case used the following language:

" The rule given by the statute is beneficial and based on elevated grounds of policy, and it ought not to be frittered away by refinements."

The court below did not err in excluding Dr. Taber's testimony.

The other questions raised by defendant have been examined, but require no comment. The charge was fair to defendant and stated the law correctly, and the small verdict indicates that the jury acted without prejudice.

The judgment is affirmed.

OSTRANDER, C. J., and BLAIR, MCALVAY, and STONE, JJ., concurred.