[Civil No. 2401. Filed December 10, 1925.]

[241 Pac. 518.]

# PAOLO PERAZZO, Appellant, v. JOSE ORTEGA, Appellee.

1. APPEAL AND ERROR—VARIANCE BETWEEN ALLEGATION AND PROOF AS TO DOG WHICH BIT PLAINTIFF HELD HARMLESS.—In action for damages from being bitten by a black dog as alleged, where the testimony showed plaintiff was bitten by a black and white dog, variance *held* harmless; the dog in question having been produced in court by defendant, and identified by plaintiff.

2. TRIAL—MOTION TO STRIKE OUT ALL EVIDENCE, SOME OF WHICH WAS ADMISSIBLE, HELD PROPERLY OVERRULED.—Motion to strike out all evidence of witness, some of which was properly admitted, *held*

properly overruled, as court is not required to separate admissible from inadmissible evidence.

3. ANIMALS—JURY MAY INFER VICIOUS DISPOSITION OF DOG FROM SINGLE ATTACK BY IT ON PERSON.—Jury may infer vicious disposition of dog from single act of dog, especially if it is an attack on a person; the law not requiring any particular number of instances of unprovoked attack or injury to show vicious disposition.

4. ANIMALS—EVIDENCE HELD SUFFICIENT TO SUBMIT TO JURY QUESTION AS TO VICIOUS NATURE OF DOG.—Evidence *held* sufficient to submit to jury question as to vicious nature of dog which attacked plaintiff.

5. ANIMALS—KNOWLEDGE OF VICIOUS DISPOSITION OF DOG NEED NOT BE ACTUAL, BUT MAY BE IMPUTED.—Knowledge of vicious disposition of dog need not be actual, but may be imputed.

6. HUSBAND AND WIFE—NOTICE TO WIFE OF VICIOUS DISPOSITION OF DOG IS NOTICE TO HUSBAND.—Where a wife, with the knowledge of the husband, has the actual custody or control of a dog, notice to her of the vicious disposition of the dog is notice to the husband.

7. ANIMALS—EVIDENCE HELD TO JUSTIFY FINDING DEFENDANT HAD CONSTRUCTIVE NOTICE OF VICIOUS CHARACTER OF GRANDSON'S DOG. Evidence *held* sufficient to justify finding that defendant, who harbored and kept dog belonging to his grandson, had constructive notice of the vicious character of the dog.

8. ANIMALS—PLEADING HELD NOT TO REQUIRE PROOF THAT DOG WAS ACCUSTOMED TO WORRY DOMESTIC ANIMALS, OR TO BITE MANKIND. Pleading, in action for damages from dog bite, *held* not to require proof that dog, as alleged, was accustomed to worry domestic animals, or to bite mankind; evidence of a propensity to attack mankind being sufficient in that respect.

9. APPEAL AND ERROR—VERDICT, BASED UPON REASONABLE CONFLICT IN EVIDENCE, NOT DISTURBED.—Supreme Court will not interfere with verdict of jury, based upon reasonable conflict in evidence.

10. ANIMALS—EVIDENCE HELD TO AUTHORIZE SUBMISSION TO JURY OF QUESTION OF WIFE'S KNOWLEDGE OF VICIOUS CHARACTER OF DOG. Evidence *held* sufficient to authorize submission to jury of question of defendant's wife's knowledge of vicious character of dog.

---

5. Scienter necessary to charge owner with liability for injury inflicted by dog, see notes in 20 **Ann. Cas.** 73; 6 **L. R. A. (N. S.)** 458; 24 **L. R. A. (N. S.)** 460. See, also, 1 **R. C. L.** 1117.

6. See 1 **R. C. L.** 1119.

9. See 2 **R. C. L.** 194.

u

11. ANIMALS—EVIDENCE HELD TO JUSTIFY INSTRUCTION AS TO DEFENDANT'S LIABILITY AS KEEPER OF DOG, WITHOUT PROOF OF OWNERSHIP.—In action for damages from having been attacked by a dog, alleged to have been harbored and kept by defendant, evidence that defendant was in control of the dog *held* to justify instruction as to his liability as keeper, without proof of ownership.

12. TRIAL—INSTRUCTIONS MUST BE CONSTRUED AS WHOLE.—Instructions must be construed as whole, and not by taking isolated sentences or parts therefrom.

13. EVIDENCE—NOT PRESUMED THAT DOCTOR, IF HE HAD TESTIFIED, WOULD HAVE STATED THAT BILL FOR SERVICES RENDERED WAS EXCESSIVE.—It will not be presumed that a doctor, if he had testified, would have stated that services rendered by him were not worth amount of his bill, and that the bill was excessive.

14. STIPULATIONS—STIPULATION AS TO WHAT DOCTOR WOULD HAVE TESTIFIED TO HELD TO AUTHORIZE INSTRUCTION AS TO EXPENSE OF MEDICAL ATTENDANCE.—In action for injury, stipulation, whereby defendant admitted a doctor would testify a certain way if on the stand, but did not admit that the medical services rendered by him were worth the amount he would have stated, *held* to authorize an instruction as to the expense of medical attention given to plaintiff.

15. TRIAL—OFFER OF INCOMPETENT EVIDENCE HELD PREJUDICIAL, IN VIEW OF VERDICT.—In action for injuries from dog bite, resulting in verdict for $5,000 as compensatory damages and $1,283.50 as punitive damages, offer of evidence of an attack on witness by an unidentified dog, which counsel must have known to have been incompetent, *held* prejudicial, though jury was instructed to disregard it.

See (1) 4 C. J., p. 946, n. 14. (2) 38 Cyc., p. 1405, n. 51. (3, 4) 3 C. J., p. 90, n. 45, p. 119, n. 13, 14, 15, p. 121, n. 35. (5, 6) 3 C. J., p. 96, n. 92, 93, p. 97, n. 99, p. 104, n. 90. (7) 3 C. J., p. 106, n. 22 New, p. 118, n. 1 New, 2. (8) 3 C. J., p. 113, n. 26, 27. (9) 3 C. J., p. 121, n. 33; 4 C. J., p. 858, n. 3. (10) 3 C. J., p. 121, n. 36. (11) 3 C. J., p. 106, n. 21, p. 113, n. 29, p. 121, n. 34, p. 122, n. 45. (12) 38 Cyc., p. 1778, n. 73, p. 1779, n. 75, 76. (13, 14) 22 C. J., p. 118, n. 99 New; 36 Cyc., p. 1291, n. 65. (15) 4 C. J., p. 874, n. 39, 48, p. 990, n. 26; 38 Cyc., p. 1478, n. 58.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Dudley W. Windes, Judge. Judgment reversed and cause remanded for new trial.

Messrs. Alexander & Christy and Mr. Hess Seaman, for Appellant.

Mr. D. A. Fraser and Mr. Albert R. Smith, for Appellee.

LOCKWOOD, J.—Jose Ortega, hereinafter called plaintiff, brought suit for damages against Paola Perazzo, hereinafter called defendant, alleging substantially as follows:

"That on and before the 28th day of April, 1924, the defendant owned and kept a vicious black dog, well knowing him to be of vicious and mischievous disposition, and accustomed to worry domestic animals and attack and bite mankind; that on said date while plaintiff was lawfully proceeding . . . upon the Tempe road, a public highway, riding upon his bicycle, the said vicious black dog of defendant ran from under the fence of the yard of defendant . . . and viciously, mischievously, and ferociously attacked and bit the plaintiff, and threw him off his bicycle with such force and violence as to fracture his left elbow . . . ; that, as the direct result of said attack, plaintiff has suffered great pain and anguish, and has had his left arm permanently disabled, and has had to employ the services of a physician, . . . and has had to incur hospital expenses, . . . all to his damage in the sum of $5,000 actual damages and $2,000 punitive damages. . . . "

Defendant answered with a general demurrer and general denial. The case was tried to a jury, which returned a verdict in favor of plaintiff in the sum of $5,000 compensatory damages and $1,283.50 punitive damages. Judgment was duly rendered thereon and a motion for new trial made. The court ordered that plaintiff remit all punitive damages, or that a new trial would be granted, and plaintiff complying with the order of the court, the motion for new trial was duly

overruled, whereupon defendant appealed to this court, filing a *supersedeas* bond.

There are some nine assignments of errors which we will consider in their order. The first is that the complaint alleges plaintiff was attacked and bitten by a "black" dog, whereas, plaintiff's own testimony is that he was bitten by a "black and white" dog, and that therefore there is a material variance between the complaint and the evidence. It appears that the dog in question was actually produced in court by the defendant, was identified by the plaintiff, and that, with the exception of white spots on the tip of its tail, its forehead, and its breast, the rest of the animal was admittedly black in color.

If there were any claim that defendant had been misled as to the identity of the dog involved, there might be some merit in the contention, but, when all the parties agreed on the particular animal referred to in the complaint, we think to hold the minute spots of white appearing on an otherwise black animal created a variance sufficient to cause the case to be reversed would be a technicality of refinement equal to that of the famous character in Hudibras who "could a hair divide between the south and southwest side." There is no merit in the first assignment.

The second assignment is that the court erred in refusing to strike out the testimony of Mrs. Rosaria De Lambert on the ground that it was hearsay. The witness had testified to a number of things, part of which she saw herself, and part of which she heard from other persons, and counsel for the defense, after the testimony had been completed, made the following motion:

"I move to strike out all the evidence of this witness with reference to this dog attacking this colored woman as hearsay."

Part of the evidence was admissible and part was objectionable, but it was not the duty of the court to separate it, and, counsel having made his motion in these general terms, it was properly overruled.

The third assignment of error is that the court erred in refusing to direct a verdict for the defendant on the ground that the evidence was insufficient in three respects: First, that it does not show defendant was the owner and keeper of a vicious black dog; second, that it does not show that he was the owner and keeper of a vicious black or black and white dog, with knowledge of its viciousness; and, third, that it does not show the dog was accustomed to worry domestic animals, and to attack and bite mankind. The first point has been discussed by defendant more particularly under his sixth assignment of error, and we will consider it in the same place.

The second point involves two questions: First, Was there sufficient evidence that the dog in question was vicious? And, second, if so, did defendant have either direct or imputed knowledge thereof? There is no evidence that the animal, before this occasion, actually succeeded in biting any passers-by. There is, however, evidence of one specific attack upon a person, and that thereafter the dog was kept tied up, and the general testimony of the witnesses Charles Donofrio and Rosaria De Lambert that when the dog was loose he would bark at dogs and anything, and would at times go out into the road if the other dogs went out.

There is no rule of law which requires any particular number of instances of unprovoked attack or injury to show a vicious disposition in an animal, and the jury may draw such inferences from a single act, especially if it be an attack upon a person. *Kittredge v. Elliott*, 16 N. H. 77, 41 Am. Dec. 717; *Coggswell v. Baldwin*, 15 Vt. 404, 40 Am. Dec. 686; *Cockerham*

v. *Nixon,* 33 N. C. 269; *Arnold* v. *Norton,* 25 Conn. 92; *Cuney* v. *Campbell,* 76 Minn. 59, 78 N. W. 878; *Mann* v. *Weiand,* 81 Pa. 243. Nor need it be shown the animal has actually bitten people. As is said in *McCaskill* v. *Elliott,* 5 Strob. (S. C.) 196, 53 Am. Dec. 706:

"In every case for mischief done by an animal, . . . the cause of action is the defendant's breach of social duty in not effectually preventing a thing within his control from doing the harm complained of, when his previous information ought to have shown that the thing was likely to do such harm if not prevented. . . . But under the second count alleging a ferocious and mischievous disposition, whatever was calculated to establish the dangerous propensity of the animal in sufficient degree tended to support the allegation, and was properly left to the jury. That a dog has once bitten a man is a circumstance from which the probability of its biting another may be inferred; but the same inference may be drawn with equal confidence from other indications of the dog's disposition. Indeed, attempts before made by a dog that had never succeeded in actually biting may give more full assurance of danger to be apprehended from it than could exist as to another dog that under some peculiar circumstances had used its teeth upon man. To require that a plaintiff, before he can have redress for being bitten, should show that some other sufferer had previously endured harm from the same dog, would be always to leave the first wrong unredressed, and to lose sight of the thing to be proved, in attention to one of the means of proof. If nothing short of a dog's once having bitten can show its dangerous nature, even the owner of a dog known to have been bitten by a rabid animal may not be answerable unless on some previous occasion the dog has inflicted the dreadful injury, which he was bound to have apprehended and prevented."

So, also, in *Johnson* v. *Eckberg,* 94 Ill. App. 634, where the court says:

"It is not the law that the defendant must have been notified of an unjustifiable biting of some person before defendant could have notice he had a propensity to bite mankind. If the dog, to the knowledge of appellant, had made vicious attacks upon persons without actually biting them, that would have been sufficient to put him upon notice of a vicious propensity of the dog."

We think there was sufficient evidence to go to the jury as to the vicious nature of the dog.

But it is necessary not only that the dog be vicious, but that defendant have notice thereof. While there is a conflict of authorities upon this point, the better and more modern rule is that the knowledge need not be actual, but may be imputed, and notice to the wife while she is, with the knowledge of the husband, in the actual custody or control of the dog, is notice to the husband. *Smith* v. *Royer,* 181 Cal. 165, 183 Pac. 660; *Ayers* v. *Macoughtry,* 29 Okl. 399, 37 L. R. A. (N. S.) 865, 117 Pac. 1088; *Halm* v. *Madison,* 65 Wash. 588, 118 Pac. 755; *Barclay* v. *Hartman,* 2 Marv. 351, 43 Atl. 174; *Boler* v. *Sorgenfrei* (Sup.), 86 N. Y. Supp. 180.

Defendant himself testified:

"Q. Who is in the active conduct of the affairs of the house? Who is the active person of the house? Who conducts the affairs there? A. Myself. I conduct all the time.

"Q. What part does your wife take there? A. Why, she takes the kitchen and the dogs; that is all. . . .

"Q. Did you consent that these dogs remain on your ranch? A. Well, I never consented because I don't like the dogs, but—

"Q. What action, if any, have you taken to get these dogs away from the ranch? A. Well, I no like the dogs. I no like the dogs absolutely—you know well—I don't believe it necessary all the dogs, but

the children like, my wife, she like, and what I going to do? I let it go; that is all.''

We think this evidence sufficient to justify the jury in finding he had constructive notice of the character of the dog, and that he was harboring and keeping the same, even though the ownership might actually be in his grandson. *Smith* v. *Royer, supra; Slater* v. *Sorge,* 166 Mich. 173, 131 N. W. 565.

Nor do we think it was necessary, under the pleadings, to prove the dog was accustomed to worry domestic animals or to bite mankind. It was sufficient to show a propensity to attack mankind, and, as we have said, there was evidence enough to go to the jury on this point.

The fourth assignment of error is that there is not sufficient evidence to establish the identity of the dog alleged to have bitten plaintiff as defendant's dog. It is not necessary to quote the testimony on this point. There was a positive identification of the dog by plaintiff as the one which bit him, and knocked him from his wheel. Witnesses for defendant testified to facts which would sustain a contrary conclusion. We therefore follow our well-known rule of not interfering with the verdict of a jury where there is a reasonable conflict in the evidence.

The fifth point is covered by what we have said in regard to imputed notice, and the court correctly charged the jury that the owner or keeper of a dog might be charged with knowledge of its vicious propensity by reason of the wife's knowledge thereof. There was no comment upon the facts in the instruction, and the evidence was sufficient to go to the jury on the point of the wife's knowledge.

The sixth assignment raises the question, in addition to the one we have already passed on as to the necessity of proof as to the character of the dog, that it is alleged that defendant was both owner and

keeper of the animal, while the instruction permits them to return a verdict against him if he were either owner or keeper. We think the evidence was sufficient to go to the jury on the question of the defendant being the keeper, and that proof thereof was sufficient without the necessity of showing ownership also. This is a civil and not a criminal action. *Twigg* v. *Ryland,* 62 Md. 380, 50 Am. Rep. 226; *Abraham* v. *Ibsen,* 213 Ill. App. 210; *Miller* v. *Reeves,* 101 Wash. 642, 172 Pac. 815; *Smith* v. *Royer, supra; City of Globe* v. *Shute,* 22 Ariz. 280, 196 Pac. 1024; 3 C. J. 106.

The seventh assignment is that the instruction of the court in regard to the measure of damages was incorrect, and in support thereof counsel quotes a portion of the court's charge on this issue. This portion, if standing alone, might have been incorrect, but taken into consideration with the portion of the charge immediately following, we think it properly states the law, and could not have misled the jury. As we have frequently stated, instructions must be construed as a whole, and not by taking isolated sentences or parts therefrom.

The eighth assignment is that the court included among the possible elements of damage ''the expense of medical attention and care that naturally and proximately resulted from the injury, . . . '' when as a matter of fact there was no evidence as to the value of medical attention and care given to the plaintiff. The record shows that it was stipulated a physician would have testified as to the amount of the bill, the services and extent of the injury to plaintiff already appearing in the record, but defendant's attorney said:

''I will admit he will testify to it, but I will not admit it is worth it.''

And the court stated:

"Let the record show counsel avows he would so testify, and counsel for the defense consents that he would so testify."

While the stipulation is indefinite, we think the only reasonable inference which could have been drawn by the court and counsel for the plaintiff from the statement of counsel for the defense is that he would admit that the amount of the bill might go before the jury as evidence on behalf of plaintiff as to the value of medical services, but that he did not intend to be bound thereby. It is not to be presumed that Dr. Goodrich, if he had testified, would have stated that he had put in a bill for $885, but that the services were not worth that much, and the bill was excessive. On the other hand, defendant, of course, reserved the right to offer his own evidence as to the value of services, the character of which had been fully testified to. We think the stipulation should be construed in the way in which it was undoubtedly understood by the court and counsel for plaintiff, and that the assignment should be overruled.

The ninth assignment of error is that the court erred in refusing to vacate the judgment for the reason that the verdict is excessive, and appears to have been rendered as a result of passion, bias and prejudice, and was induced in part, at least, by the improper conduct of counsel during the course of the trial. This alleged improper conduct was in offering the testimony of the witness Margaret Campbell, when, it is contended, counsel must have known the same was incompetent. We have read the testimony of this witness carefully. We are satisfied that it was incompetent, and that the court properly instructed the jury to disregard it, on motion of counsel for defendant. We feel, however, that the evidence must necessarily have been prejudicial in the highest degree to defendant, and it is a well-known fact that,

when evidence is once admitted before a jury, it is almost impossible for them to disregard it.

Counsel for plaintiff had presumably properly prepared his case, and, if so, he must have questioned the witness before placing her on the stand, and known she could not identify the dog which assaulted* her. Notwithstanding this, he called her to testify as a witness, and brought out what to the jury was undoubtedly the most damaging evidence in the case, over the objection of defendant. As we stated in the case of *Blue Bar Taxicab, etc.,* v. *Hudspeth,* 25 Ariz. 287, 296, 216 Pac. 246, 249:

"The consequence of such information is well known, and is sufficient to require a new trial. It is useless for counsel to talk of the innocuous character of this evidence when they, at the same time, in order to get the information before the jury, are willing to imperil any verdict which might be rendered. All lawyers know the rule in regard to such evidence, and they must not expect the court to establish a rule, and then wink at its violation."

In the case at bar the verdict of the jury was for the full amount of compensatory damages asked, and in addition for a very large amount of punitive damages. It is true these latter were remitted in the lower court, but the very fact that they were given shows to our minds, when considered with the evidence in the whole case, that the jury must have been influenced by passion and prejudice, and by the evidence of Mrs. Campbell which, of course, had no business being before them.

Much as we dislike to disturb the verdict of a jury, in this case we are compelled to believe that it was the result of passion and prejudice, and that the case should be reversed and remanded for a new trial.

It is so ordered.

McALISTER, C. J., and ROSS, J., concur.