IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

KEVIN SPIRLONG and ANNE SPIRLONG, husband and wife, individually and on behalf of their minor son, LOGAN SPIRLONG, *Plaintiffs/Appellants/Cross-Appellees*,

*v.*

CHARLES BROWNE, *Defendant/Appellee/Cross-Appellant.*

No. 1 CA-CV 12-0763
FILED 10-28-2014

---

Appeal from the Superior Court in Maricopa County
No. CV2008-030976
The Honorable Hugh E. Hegyi, Judge

**AFFIRMED**

---

COUNSEL

Gallagher & Kennedy, P.A., Phoenix
By Jeffrey T. Pyburn, Jonathan T. Hasebe
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Perry Childers Hanlon & Hudson, PLC, Phoenix
By Gary L. Hudson, Jr.
*Counsel for Defendant/Appellee/Cross-Appellant*

---

**OPINION**

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge John C. Gemmill joined.

---

**N O R R I S**, Judge:

¶1          Under state statutes, a person "keeping" a dog for more than six consecutive days is considered the dog's owner and is strictly liable for any injuries and damages caused by the dog.  The issue in this appeal is whether "keeping" requires the person to have exercised care, custody, or control of the dog.  We hold it does.

## FACTS AND PROCEDURAL BACKGROUND

¶2          In August 2007, Defendant/Appellee Charles Browne rented two rooms in his home to David Mayes and his wife.  Mayes owned two dogs, including a Belgian Malinois named Joop.  Mayes brought both dogs with him when he and his wife moved into Browne's home.  Mayes was solely responsible for caring for the dogs.

¶3          On December 11, 2007, Browne left for work at 6:45 a.m. When he left, Mayes and Shasta Russell, Browne's live-in girlfriend, were at home.  At some point that day, Mayes asked Russell, "Do you want me to leave [Joop] out [of his crate] so he can keep you company?"  Russell responded, "Sure, yes."  Later that day, Russell put Joop into the backyard. Joop escaped from the backyard and bit the son of Plaintiffs/Appellants Kevin and Anne Spirlong, who was riding his bike on a nearby city street.

¶4          The Spirlongs sued Browne, Mayes, and Russell.  The Spirlongs alleged, as relevant here, that the three were strictly liable for their son's injuries under Arizona Revised Statutes ("A.R.S.") sections 11-1020 and 11-1025 (2012), statutes that impose strict liability on dog owners for injuries and bites caused by their dogs (collectively, "dog bite statutes").[1]  Browne answered the complaint, alleging the fault of others as

_____

          [1]Section 11-1020 imposes liability when the dog is "at large." It provides that "[i]njury to any person or damage to any property by a dog while at large shall be the full responsibility of the dog owner or person or persons responsible for the dog when [the] damages were inflicted." Section 11-1025 deals specifically with dog bites.  It states that "[t]he owner of a dog which bites a person when the person is in or on a public place or lawfully in or on a private place . . . is liable for damages suffered by the person bitten . . . ."

an affirmative defense. Neither Mayes nor Russell responded or otherwise defended, and the Spirlongs obtained default judgments against them.

¶5 Subsequently, Browne and the Spirlongs cross-moved for summary judgment, and as relevant here, contested whether, as a matter of law, Browne was Joop's owner under the dog bite statutes ("statutory owner"). The dog bite statutes define a statutory owner as "any person keeping an animal other than livestock for more than six consecutive days." A.R.S. § 11-1001(10) (2012).[2] After finding the word "keeping" ambiguous, the superior court concluded that "to 'keep' a dog . . . an individual must exercise a substantial degree of care, custody, and control over the animal." The court then found Browne met this requirement as a matter of law because he had "made the determination to allow Joop to reside in his home, and he alone controlled the physical condition, maintenance, upkeep, and improvements to the physical structures which, ultimately, controlled and maintained custody over Joop." Accordingly, the superior court granted the Spirlongs' cross-motion, ruling that Browne was Joop's statutory owner, and thus, strictly liable for the Spirlongs' son's injuries.

¶6 The case proceeded to trial. After the parties rested, the court refused to dismiss Browne from the case, and denied his motion for judgment as a matter of law. The court then instructed the jury that it had already determined Browne was Joop's statutory owner.[3] Over the Spirlongs' objection, the court further instructed the jury on comparative fault vis-à-vis Browne, Mayes, and Russell. The jury returned a verdict in favor of Browne.

## DISCUSSION

¶7 Although the Spirlongs and Browne have raised a number of arguments regarding the applicability of comparative fault to the dog bite statutes, the dispositive issue before us turns on a different issue—whether Browne was Joop's statutory owner under A.R.S. § 11-1001(10). If he was not Joop's statutory owner, then as Browne argues, the superior court

---

[2]The statutory definition of "owner" applies to both A.R.S. § 11-1020 and A.R.S. § 11-1025. *See* A.R.S. § 11-1001 and A.R.S. § 11-1028 (2012).

[3]At the Spirlongs' request, the court also instructed the jury on premises liability.

should have dismissed the statutory dog bite claims against him as a matter of law.

¶8        As discussed, A.R.S. § 11-1001(10) defines an "owner" as "any person keeping an animal other than livestock for more than six consecutive days."  As they did in the superior court, the parties dispute the meaning of the word "keeping," with Browne arguing "keeping" requires a person to have care, custody, or control of the dog and the Spirlongs arguing "keeping" simply requires a person to "house" a dog in his or her home for a minimum of six consecutive days.  As the superior court observed, the dog bite statutes do not define "keeping," and, indeed the word has multiple meanings. *See infra* ¶ 10.  Thus, we agree with the superior court the word "keeping" as used in A.R.S. § 11-1001(10) is ambiguous.  Because the interpretation of statutory language presents a question of law, we exercise de novo review.  *Home Builders Ass'n of Cent. Ariz. v. City of Maricopa*, 215 Ariz. 146, 149, ¶ 6, 158 P.3d 869, 872 (App. 2007).  We agree with Browne's construction of the word "keeping."

¶9        In construing a statute, our goal is to give effect to the intent of the Legislature.  "We will give effect to each word or phrase and apply the 'usual and commonly understood meaning unless the legislature clearly intended a different meaning.'"  *Indus. Comm'n of Ariz. v. Old Republic Ins. Co.*, 223 Ariz. 75, 77, ¶ 7, 219 P.3d 285, 287 (App. 2009) (quoting *Bilke v. State*, 206 Ariz. 462, 464–65, ¶ 11, 80 P.3d 269, 271–72 (2003)); *see also* A.R.S. § 1-213 (2002) (statutory language should be construed according to common and approved use of the language).  Further, if the statutory language is not clear, we may consider other factors, including "the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose."  *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991).

¶10        The word "keeping" has multiple common meanings.  *See* The American Heritage Dictionary 957 (4th ed. 2006) (listing 14 distinct definitions for the word "keep" when used as transitive verb).  In the context of ownership of an animal, one common meaning is of particular relevance here: "To manage, tend, or have charge of."  *Id.*  This definition is also most consistent with the general legal definition of "keeping." As noted in Black's Law Dictionary 885 (8th ed. 2004), a "keeper," is "[o]ne who has the care, custody, or management of something and who usu[ally] is legally responsible for it."  These definitions suggest a construction of "keeping" that requires a person to exercise care, custody, or control over a dog

instead of simply allowing a dog to stay in his or her home for six consecutive days, as the Spirlongs argue.

¶11        This construction is supported by other statutory language retained by the Legislature when it adopted the definition of "owner" in what is now A.R.S. § 11-1001(10).  In 1975, the Legislature amended and enacted various animal control statutes.  *See generally* 1975 Ariz. Sess. Laws ch. 164 (1st Reg. Sess.).  Not only did the Legislature enact what is now A.R.S. § 11-1020, 1975 Ariz. Sess. Laws, ch. 164, at § 11, and the definition of "owner" we have today, *id*. at § 1, but it also amended the statute requiring county license fees for dogs.  *Id*. at § 6. In amending the license fee statute, it retained the requirement that all dogs "kept, harbored or maintained" within the state must be licensed.  *Id*.  The Legislature did not, however, incorporate the words "harbor" or "maintain" or their derivatives, "harboring" or "maintaining," in the definition of "owner."  Instead, it restricted the definition of "owner" to a person "keeping an animal."  By restricting the definition of "owner" to a person "keeping an animal" and not expanding it to include a person harboring or maintaining an animal, we conclude the Legislature was attempting to distinguish between keeping an animal and harboring (or maintaining) an animal, which, as we discuss below, *see infra* ¶ 17, occurs when a person simply provides a place for an animal to stay.  *Cf. Alejandro v. Harrison*, 223 Ariz. 21, 24, ¶ 8, 219 P.3d 231, 234 (App. 2009) (when drafters of a statute include particular language in one part of a statute, but not in another part of the statute, courts should not read "that language into the portion of the statute or rule from which the particular language has been omitted.").

¶12        Our analysis also comports with Arizona's approach to dog bite liability under the common law.  For example, in *Perazzo v. Ortega*, 29 Ariz. 334, 342, 241 P. 518, 520 (1925), *appeal after remand*, 32 Ariz. 154, 256 P. 503 (1927), the plaintiff sued a grandfather under a common law theory of liability for injuries caused by a dog owned by the grandfather's grandson, who lived with the grandfather and his family. 29 Ariz. at 342, 241 P. at 520; 32 Ariz. at 162, 256 P. at 506.  The plaintiff presented evidence that even though the grandfather had not consented to the dog's presence, he nevertheless had allowed the dog to live with his family because his wife and "the children" liked dogs.  29 Ariz. at 341-42, 241 P. at 520.  The grandfather had also allowed his wife to take care of the dog.  *Id*. at 342, 241 P. at 520.  The Arizona Supreme Court recognized this evidence was "sufficient" for the jury to find the grandfather was "harboring and keeping" the dog and thus had constructive notice of the dog's "vicious" disposition.  *Id*.  The court also recognized the plaintiff did not have to

prove the grandfather was the dog's owner because this evidence "was sufficient to go to the jury on the question of the [grandfather] being [its] keeper." *Id.* at 343, 241 P. at 520.

¶13        Significantly, in reaching these conclusions, the court relied on a number of cases recognizing that a head of a household may be liable for injuries caused by a dog if he or she permits a relative such as a spouse, son, or in-law who exercises care, custody, or control of a dog to live in the household, as a member of the family. Put more colorfully, these cases recognize that in such a situation, the head of the household has essentially taken or accepted the dog into the home as a four-footed member of the family. When, however, a person merely permits another individual who owns a dog to live on his or her property but does not include or treat the other individual as a member of the household, that person is not liable for injuries caused by the other individual's dog. Although *Perazzo* predated Arizona's dog bite statutes by decades, its reasoning and the cases it relied on are consistent with our construction of the word "keeping" and our conclusion that a person does not keep a dog unless he exercises care, custody, or control over it.

¶14        Further, under the dog bite statutes a statutory owner is strictly liable for injuries caused by a dog. *Massy v. Colaric*, 151 Ariz. 65, 66, 725 P.2d 1099, 1100 (1986) (discussing prior versions of A.R.S. §§ 11-1020 and 11-1025). In contrast to the common law, a plaintiff asserting a statutory dog bite claim does not need to show the defendant knew or should have known the dog had dangerous propensities abnormal to its class. *Jones v. Cox*, 130 Ariz. 152, 153 n.1, 634 P.2d 964, 965 n.1 (App. 1981). And, unlike the common law, the statutory owner will bear liability for injuries caused by a dog even if he exercised utmost care to prevent any harm. *Id.* at 154, 634 P.2d at 966. Given the effects and consequences of strict liability in this context, construing "keeping" as requiring care, custody, or control of a dog allows the defendant an opportunity to assess whether the dog presents a risk he or she is willing to accept.

¶15        The Spirlongs argue, however, that because the dog bite statutes are designed to protect the victim, they impose what should be viewed as a form of absolute liability and we should, therefore, construe "keeping" broadly to include anyone who "houses" a dog. As discussed, the dog bite statutes impose strict, not absolute liability, *see supra* ¶ 14. *Johnson ex rel. Johnson v. Svidergol*, 157 Ariz. 333, 335, 757 P.2d 609, 611 (App. 1988) (discussing what is now A.R.S. § 11-1025; statutory owners are strictly liable for injuries caused by their dogs, but "strict liability does not mean

absolute liability"). Further, if the Legislature had intended to extend liability to anyone who "houses" a dog, we presume it would have used language expressing this intent so that individuals would be able to appreciate the risk they are assuming in doing nothing more than this. *Cf. Murdock v. Balle*, 144 Ariz. 136, 138, 696 P.2d 230, 232 (App. 1985) (predecessor to A.R.S. § 11-1025 is in derogation of the common law and is subject to "strict, literal construction").

¶16  In *Trager v. Thor*, 516 N.W.2d 69 (Mich. 1994), the Michigan Supreme Court recognized that to be equitable, strict liability for dog bites should not be imposed unless the liable party has been given an opportunity to assess the potential risk posed by the dog. Construing "keeping" as requiring care, custody, or control ensures the equitable application of strict liability for dog bites. As the court in *Trager* observed,

> [L]iability is not imposed because of a failure to restrain the animal, since the utmost care in that regard is not a defense to liability. . . .
>
>  In order for such allocation [of strict liability] to be equitable, the liable party must have sufficient custody and sufficient control of the animal to assess whether a risk is presented by an abnormal propensity and to decide whether an animal should be brought into or remain in the community. It is this proprietary control, akin to ownership, that we hold must be present to deem a party a keeper, and potentially liable, under the common-law strict liability principle.

*Id*. at 73.

¶17  Our construction of "keeping" is also consistent with other courts that have considered and interpreted the same or similar statutory terms. For example, Minnesota defines an "owner" as including any person who either harbors or keeps a dog. Minn. Stat. § 347.22 (1986). The Supreme Court of Minnesota explained the distinction between the two concepts:

> Harboring means to afford lodging, to shelter or to give refuge to a dog. Keeping a dog, as used in the statute before us, implies more than the mere harboring of the dog for a limited purpose

> or time. One becomes the keeper of a dog only
> when he either with or without the owner's
> permission undertakes to manage, control or
> care for it as dog owners in general are
> accustomed to do.

*Verrett v. Silver*, 244 N.W.2d 147, 149 (Minn. 1976). Additionally, in *Pawlowski v. American Family Mutual Ins. Co.*, 777 N.W.2d 67 (Wis. 2009), the Wisconsin Supreme Court construed Wisconsin's dog bite statute that, like Minnesota's statute, defines an "owner" as including any person who "harbors or keeps a dog." The court explained those words were not synonymous, and that "keeping" required the exercise of some measure of care, custody, or control while "harboring" simply required giving shelter or refuge to a dog. *Id*. at 73.[4] *See generally*, John P. Ludington, Annotation, *Who "Harbors" or "Keeps" Dog under Animal Liability Statute*, 64 A.L.R. 4th 963, §§ 3-4 (1988) (describing distinction between "harboring" and "keeping" a dog).

¶18 Applying the foregoing principles, we hold the definition of "keeping" under the dog bite statutes requires a person to exercise care, custody, or control of a dog. Whether a person has exercised sufficient care, custody, or control to be a statutory owner of a dog will generally present

---

[4]The distinction between a person who keeps a dog and a person who harbors a dog has not been, as the Wisconsin Supreme Court in *Pawlowski* also noted, "crisp over the years." 777 N.W.2d at 73. Some courts have used these terms to differentiate between a person who exercises care, custody, or control of a dog from one who does not and, instead, simply provides a place for the dog to stay. Other courts have used these terms interchangeably to refer to a person who exercises care, custody, or control over a dog. Indeed, in *Perazzo*, our supreme court noted the grandfather had harbored and kept the dog. 29 Ariz. at 342, 241 P. at 520. Although the court described the grandfather as harboring the dog, as discussed above, the grandfather's relationship with the dog went far beyond harboring. *See supra* ¶¶ 12-13. Other Arizona courts, applying common law liability principles, have also used these terms interchangeably. In each case, however, the liable party either actually owned the animal or had exercised care, custody, or control over the animal. *See Ariz. Livestock Co. v. Washington*, 52 Ariz. 591, 84 P.2d 588 (1938) (actual owner); *Walter v. S. Ariz. Sch. for Boys, Inc.*, 77 Ariz. 141, 267 P.2d 1076 (1954) (actual owner); *Vigue v. Noyes*, 24 Ariz. App. 144, 536 P.2d 713 (1975) (actual owner and owner of stable), *vacated in part by* 113 Ariz. 237, 550 P.2d 234 (1976).

an issue of fact and will depend on the facts and circumstances of the particular case.

**¶19**      The superior court concluded the "keeping" requirement of the statutory definition of "owner" could be satisfied by evidence that a defendant merely allowed a dog to live on property the defendant controls. We disagree. Such evidence, without more, would shift the meaning of "keeping" from the care, custody, or control of the dog to the care, custody, or control of the property.

**¶20**      Although whether a person has exercised sufficient care, custody, or control to be a statutory owner of a dog will normally present an issue of fact, that is not the case here. The Spirlongs presented no evidence Browne exercised any care, custody, or control over Joop. Browne simply allowed Joop to live in his home; Mayes was solely responsible for Joop; and Joop was under Mayes' care, custody, and control. Further, the Spirlongs presented no evidence Browne ever treated Mayes, and by extension Joop, as a member of his family. Given this record, the superior court should have dismissed the Spirlongs' statutory dog bite claims against Browne as a matter of law. On this basis alone, we affirm the judgment entered by the superior court in Browne's favor.

## CONCLUSION

**¶21**      For the foregoing reasons, we affirm the judgment entered by the superior court in Browne's favor. As the prevailing party on appeal, we award Browne his costs on appeal contingent upon his compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
FILED: gsh

9