Filed 6/14/16  Pang v. Estate of Steven Yano CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TONY PANG,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ESTATE OF STEVEN YANO et al.,<br><br>    Defendants and Respondents. | B263534<br><br>(Los Angeles County<br>Super. Ct. No. BC519224) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.
Teresa Beaudet, Judge.  Affirmed.

        Law Offices of Shun C. Chen, and Shun C. Chen for Plaintiff and Appellant.

        Law Office of Steven D. Levine, and Steven D. Levine; Pollak, Vida & Fisher, and Michael M. Pollak and Anna Birenbaum for Defendants and Respondents.

_____

Plaintiff and appellant Tony Pang sued defendants and respondents Steven and Susan Yano[1] for damages allegedly suffered in a dog-bite incident. Pang's complaint alleged causes of action for strict liability (ownership of the dogs) and negligence (failure to exercise reasonable control over the dogs). The Yanos filed a motion for summary judgment (MSJ) supported by evidence showing, among other facts, that they did not own the dogs allegedly involved in the dog-bite incident. The trial court granted the Yanos' MSJ, and entered judgment in their favor. Because we agree the trial court ruled properly, we affirm.

## FACTS

On February 14, 2013, Pang visited his father who lived at 700 S. De La Fuente Street in Monterey Park. When Pang went to enter the garage at his father's house, two dogs — a pit bull and a German Shepherd — allegedly ran at Pang, and "attacked and bit" him. Pang recognized the two dogs. He had seen them before in the yard of the adjacent property to the south at 706 S. De La Fuente Street, which is owned by the Yanos. As Pang stated in a declaration in support of his opposition to the Yanos' MSJ: "[W]henever I was at my father's house in the past [five] years, before the dog bite, the two dogs always viciously and loudly barked at anyone they saw, including me, tried to break through the chain-link fence [at the Yanos' property] to attack, and tried to jump over the chain-link fence to do the same."[2]

---

[1]     Steven Yano died while Pang's case was being litigated in the trial court. In December 2014, the trial court signed and entered an order on stipulation to substitute Steven's estate into the action in his place. We use Steven Yano in this opinion for the sake of clarity. Further, we refer to the Yanos either collectively or as Steven and Susan where needed to distinguish between the two defendants with the same last name.

[2]     Pang's complaint alleged he had been bitten by a "dog." The facts concerning two dogs summarized above are taken from Pang's declaration in opposition to the Yanos' MSJ. Because an MSJ involves factual matters, we are guided by Pang's declaration.

In August 2013, Pang filed a complaint for damages against the Yanos alleging a cause of action for "strict liability," apparently based on California's so-called "dog-bite statute" (see Civ. Code, § 3342, subd. (a)),[3] and a cause of action for negligence. In October 2013, the Yanos filed an answer, generally denying the allegations in Pang's complaint. During the course of litigation, including discovery, the Yanos asserted the defense that they did not own the two dogs that allegedly bit Pang. According to the Yanos, they rented their property on De La Fuente Street to Kenneth Thim, and Thim owned the dogs. In December 2013, Pang filed an amendment to his complaint, naming Thim as a DOE defendant.[4]

In early 2014, the Yanos filed a MSJ or, in the alternative, a motion for summary adjudication of each of Pang's two cause of action. The Yanos' motion was supported by evidence showing that they did not own the dogs that allegedly bit Pang, that they rented their property on De La Fuente Street to Thim, and that Thim kept the dogs at the Yanos' property. The Yanos acknowledged that they knew Thim had the dogs, but asserted that they did not know the dogs had any vicious tendencies.

In September 2014, Pang filed a motion for discovery sanctions against the Yanos based on claims that their attorney, Robyn Jones, had engaged in wrongful conduct during Steven's deposition.

In October, Pang filed his opposition to the Yanos' MSJ. Pang argued that the Yanos's denials of ownership of the dogs were subject to questions regarding the credibility of those denials. Further, Pang submitted a declaration in which he explained that he had seen the dogs in the yard at the Yanos's property "whenever" he visited his father's house, and that the dogs displayed vicious tendencies on those occasions.

---

[3]     Hereafter section 3342(a). Pang's complaint did not specifically identify section 3342(a), but the papers in the record and the briefs on appeal make it certain that strict liability is based on the statute.

[4]     Thim failed to answer Pang's complaint, and, in December 2014, Pang filed a request to enter Thim's default. The clerk of the trial court entered Thim's default on December 1, 2014. The record before us on appeal does not show whether Pang has obtained a default prove-up judgment against Thim.

We noted Pang's specific description in his declaration above. Further, Pang submitted a declaration from an attorney, Bich Mai Nguyen, who attested that he had called Steve Yanos to tell him that Pang had been bit by dogs kept at the Yanos' property. According to attorney Nguyen, Steven "yelled at [Nguyen] and told [him] he had an attorney to represent him if . . . Pang sue[d] him."

On December 8, 2014, the parties argued the merits of the Yanos' MSJ to the trial court, and the court granted the motion. The court signed an order granting the MSJ the same day. On January 29, 2015, the court signed and entered judgment in favor of the Yanos.

Pang filed a timely notice of appeal.

## DISCUSSION

### I.      Discovery Abuse  Sanction

Pang first contends the trial court erred in ordering monetary sanctions against Steven Yanos and the Yanos' attorney, Robyn Jones, payable jointly and severally, for conduct during Steven's deposition. Pang argues the court instead should have ordered issue and or evidentiary sanctions against the Yanos, specifically, an order precluding the Yanos from introducing any evidence of a landlord-tenant relationship between the Yanos and Thim. Pang argues the Yanos could not have prevailed on their MSJ had the court issued such a preclusion order. We find no error.

### *The Governing Law*

Code of Civil Procedure section 2023.030 generally sets forth available sanctions for discovery abuse, including issue and or evidentiary sanctions. Although issue and or evidentiary sanctions ordinarily will not be imposed until after an offending party has disobeyed a prior discovery order, a court may impose such sanctions in the first instance where the circumstances warrant them. For example, in *Williams v. Russ* (2008) 167 Cal.App.4th 1215, our court affirmed an order dismissing a legal malpractice case as a discovery sanction where the plaintiff's conduct caused the destruction of discoverable evidence which — by reasonable inference — potentially would have been favorable to the defendant lawyer. (*Id*. at pp. 1222-1227.)

4

A trial court is vested with broad discretion in selecting discovery abuse sanctions, and, for this reason, the question on an appeal challenging a discovery abuse sanction "'"'is not whether the trial court should have imposed a [different] sanction; rather, the question is whether the court abused its discretion by imposing the sanction it chose.'"' [Citations.]" (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1105-1106.) A trial court abuses its discretion when it issues a ruling that is arbitrary, capricious or beyond the bounds of reason, all pertinent circumstances being considered. (*Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1249-1250.) A trial court's decision may not be reversed merely because reasonable people might disagree. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. (*Ibid.*)

***The Discovery Dispute***

During Steven's deposition on August 28, 2014, Pang's counsel asked Steven to review a copy of the "Notice of Deposition," specifically referring him to language in the notice requiring him to produce certain documents. As Steven was reviewing the notice, the Yanos' counsel, attorney Jones, "jumped in" (Pang's characterization) and stated: "We'll lay some foundation here. Counsel is getting at that there was a document request associated with the Notice of Deposition. The item in question is item No. 4 which asks for: [¶] 'Any and all rental agreement[s] between you and your tenant . . . .' [¶] I will make a representation on the record that defendant has not provided that document because a written agreement does not exist. You can follow up on that."

At another point in the deposition, attorney Jones instructed Steven not to answer any question concerning the amount of monthly rent due from, and or paid by, Thim.

At still another point in the deposition, Pang's counsel asked Steven if he was aware that a lawsuit had been filed against him, and Steven answered, "No." Attorney Jones immediately responded by stating, "He obviously knows there's a lawsuit."

On September 26, 2014, about a month after Steven's deposition, Pang filed a motion for discovery abuse sanctions against the Yanos. Pang's motion argued that the conduct summarized above showed that the Yanos' counsel, attorney Jones, repeatedly

5

"testified" for Steven during his deposition, and otherwise "coached" Steven. Pang contended this was all in a patent attempt to prevent Pang's counsel from developing "critical evidence for the jury to decide whether there was a genuine landlord-tenant relationship," and whether the dogs were owned by the Yanos, as well as Thim's "role" with the dog, and the purpose for which the Yanos and or Thim kept the dogs at the Yanos' property. The Yanos' filed opposition to the motion which argued that attorney Jones had not engaged in any wrongful conduct during Steven's deposition.

On December 4, 2014, the trial court entered an order granting Pang's discovery abuse motion in part. The court found that attorney Jones had improperly gone beyond making objections, and that "it [was] not her role to spontaneously interrupt the question to purportedly lay [a] foundation." Further, the court noted that attorney Jones had taken a break only eight minutes into a short deposition, and then taken a second break only 34 minutes later. It ruled that, while it could not determine if the breaks were for "strategic purposes," the breaks were excessive. In addition, the court found that attorney Jones had wrongly instructed Steven not to answer questions about the rent paid by Thim, noting that relevancy objections were preserved for trial, not depositions, and that if it were true that Steven had a concern about Thim's privacy, then he could have requested a protective order, which he had not. As we understand the court's order, it allowed for Pang's counsel to question the Yanos, in the event their depositions were resumed, as to the rent matters involving Thim. The court ordered the Yanos and attorney Jones to pay Pang's costs in bringing the motion ($1,560), but denied issue and or evidentiary sanctions because it found Pang had not shown that he had been prejudiced by attorney Jones' conduct at Steven's deposition.

*Analysis*

We find no abuse of discretion because we do not accept Pang's characterization of the record as showing that the Yanos and or attorney Jones were guilty of "destruction of evidence" and of engaging in "perjury." Discovery sanctions are not intended to serve the primary purpose of damaging a party's case because he or she is guilty of a discovery abuse, but to promote the end goal of promoting and obtaining discovery by curbing the

6

type of discovery abuse which occurred. (See generally *Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 488; *Doppes v. Bentley Motors, Inc*. (2009) 174 Cal.App.4th 967, 992; *Biles v. Exxon Mobil Corp*. (2004) 124 Cal.App.4th 1315, 1327.) Pang's arguments on appeal do not persuade us that the trial court's discovery sanction here, namely, a monetary sanction, was unreasonable in light of the conduct that occurred. Attorney Jones statement that there was no written lease agreement does not strike us as necessarily being an attempt to destroy evidence or perjury or coaching a witness; it is possible to interpret as a misguided attempt to move Steven's deposition forward expeditiously. Attorney Jones did not tell Steven to testify that there was no written lease agreement or to testify that there was only an oral lease agreement. Pang's implicit suggestion that had attorney Jones not spoken up, then Pang's counsel would have been able to trap Steven in a lie is more speculation than a fact supported by the record. In the end, it appears to us that the same defense theme played throughout this case. That is, the Yanos' leased their property to Thim, and that he owned the dogs that allegedly bit Pang. Attorney Jones' conduct at Steven's deposition did not change this dynamic.

## II.     The Motion for Summary Judgment

### A.  Standard of Review

"We review the trial court's summary judgment rulings de novo, viewing the evidence in a light favorable to the plaintiff as the losing party, liberally construing the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing, and resolving any evidentiary doubts or ambiguities in the plaintiff's favor." (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438.) A motion for summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant has met his burden of showing that a cause of  action has no merit if he has shown that there is a complete defense to that cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action.

7

(Code Civ. Proc, § 437c, subd. (p)(2); see also *Weber, supra*, 143 Cal.App.4th at p. 1437.)

"In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).)  In some instances, however, "evidence may be so lacking in probative value that it fails to raise any triable issue." (*Advanced Micro Devices, Inc. v. Great American Surplus Lines Ins. Co.* (1988) 199 Cal.App.3d 791, 795.)  "A court generally cannot resolve questions about a declarant's credibility in a summary judgment proceeding [citations], unless admissions against interest have been made which justify disregard of any dissimulation.  [Citation.]" (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1065.)

### B. First Cause of Action for Strict Liability

Pang contends the trial court's order granting the Yanos' MSJ must be reversed because there are triable issues of fact with regard to an element of his first cause of action for strict liability.  Specifically, whether or not the Yanos owned the dogs that attacked and bit him.  We disagree.

Section 3342(a) provides in pertinent part:

"The *owner* of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place . . . regardless of the former viciousness of the dog or the owner's knowledge of such viciousness. . . ." (Italics added.)

Section 3342(a) imposes a duty of care on every dog owner to prevent his or her dog from biting another person. (*Davis v. Gaschler* (1992) 11 Cal.App.4th 1392, 1399.) Section 3342(a) is intended to "prevent dogs from becoming a hazard to the community" by imposing this duty of care on dog owners, and assigning strict liability for its breach. (*Ibid.*)  Thus, if Pang proved at trial that (1) he was, in fact, bitten by a dog and suffered damages caused by the dog bite, and that (2) the Yanos owned the dog, then Pang would

8

be entitled to an award to compensate him for his damages from the dog-bite. (See CACI No. 463.)

The Yanos' MSJ asserted that they were not strictly liable to Pang because they did not own the dogs that bit him. They supported their MSJ with personal declarations and with references to their deposition testimony, which included assertions that they did not own the dogs. Pang's opposition to the Yanos' MSJ did not present any evidence creating a dispute of fact as to the dog ownership issue. Just by way of example, Pang did not submit a declaration of any Yanos neighbor or friend who attested to seeing the dog with the Yanos prior to Thim moving into the property, nor did Pang submit any licensing records showing that the Yanos owned the dog. Instead, Pang presented arguments along the lines that the Yanos' assertions that they did not own the dog needed to be subjected to a "credibility" assessment by a jury. Further, Pang argued that there is "better" evidence to show non-ownership of an animal than a person's denial that he or she owned the animal, although he did not explain the nature of that "better" evidence.

We find no error in the trial court's decision to summarily adjudicate Pang's first cause of action for strict liability under section 3342(a) because the record does not show the existence of any disputed evidence as to the element of whether the Yanos owned the dogs that allegedly bit Pang. As explained in *Trujillo v. First American Registry, Inc*. (2007) 157 Cal.App.4th 628, the existence of a dispute of fact within the contemplation of the MSJ statute is not created by a bald challenge to the movant's credibility; unless there is some showing of a basis to question the moving party's credibility, there is no disputed fact to be resolved by the trier of fact. (*Id*. at p. 636.) We agree with this construction of the MSJ statute because a contrary rule would mean that no MSJ could ever be granted; a party could defeat an MSJ merely by arguing that the case should be reserved for trial and a jury's assessment of credibility. Here, the Yanos' MSJ included evidence showing that they did not own the dogs. Pang offered no evidence tending to show a dispute as to the fact of non-ownership. Generously construed, Pang's evidence showed no more than that he had seen the dogs at the Yanos' property whenever he visited his father's house next door.

9

Pang's reliance on out-of-state case authorities such as *Spirlong v. Browne* (Ariz. Ct. App. 2014) 336 P.3d 779 and *Hill v. Hughes* (Ohio App. 2007) 2007 WL 2189072 are not persuasive for the simple reason that such cases did not deal with section 3342(a), and involved out-of-state tort law dealing with liability imposed on persons who "keep" or "harbor" a dog. The strict liability imposed under section 3342(a) is explicitly imposed on the "owner" of a dog. In the following section of this opinion dealing with Pang's cause of action for negligence, we address broader issues of liability as to persons who exercise control over dogs, including harboring or keeping them. Those issues, however, are distinct from the dog ownership issue presented under section 3342(a).

Finally, we reject Pang's argument that Thim may have been acting as a dog caretaker for the Yanos, which we understand to mean that the Yanos owned the dogs, while Thim agreed to take care of the dogs at the Yanos' property. The problem with this argument for purposes of strict liability under section 3342(a) is, once more, that the undisputed evidence established that the Yanos did not own the dogs that allegedly bit Pang, a required element for strict liability under section 3342(a). If Thim was taking care of the dogs for some owner, the undisputed evidence showed that the owner was not the Yanos. Thus, the trial court correctly resolved Pang's first cause of action for strict liability either pursuant to the Yanos' MSJ or their alternative motion for summary adjudication of issues.

## III. The Second Cause of Action for Negligence

Pang contends the trial court's order granting the Yanos' MSJ must be reversed because, to the extent the Yanos truly were Thim's landlords, and to the extent that the Yanos truly did not own the dogs that attacked and bit Pang, there are triable issues of fact regarding whether the Yanos exercised reasonable control over the dogs in light of their control over their rented property. We disagree, but for a slightly different reason.

Liability based upon a negligence claim is not dependent on an element of ownership. Under ordinary negligence principles, liability may be imposed upon a landlord only when it is established that the landlord had actual knowledge of the vicious propensities of the tenant's pet, but failed to take reasonable measures to protect persons

10

against the risks posed by the animal, such as by exercising the landlord's right to have the animal removed from the property.  (See, e.g., *Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 163 (*Yuzon*).)

*Yuzon*, citing *Uccelllo v. Landenslayer* (1975) 44 Cal.App.3d 504, set forth the applicable principles:  "'[A] duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities.  Because the harboring of pets is such an important part of our way of life and because the exclusive possession of rented premises normally is vested in the tenant, we believe that actual knowledge and not mere constructive knowledge is required.  For this reason we hold that a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise.'  [Citation.]  . . .  'We point out, however, that a defendant's actual knowledge may be shown, not only by direct evidence, but also by circumstantial evidence.  Hence, his denial of such knowledge will not, per se, prevent liability.  [Citations.]  However, actual knowledge can be inferred from the circumstances only if, in light of the evidence, such inference is not based on speculation or conjecture.  Only where the circumstances are such that the defendant "must have known" and not "should have known" will an inference of actual knowledge be permitted.  [Citation.]'"  (*Yuzon, supra*, at p. 163.)

The facts of the *Yuzon* case are instructive.  There, summary judgment was found to have been properly granted in favor of a landlord whose tenant kept two dogs in the home because the landlord did not know of the dog's vicious propensities owing to a lack of any prior incidents by the dogs.  That the landlord observed the dogs "pushing, barking, and jumping at the screen door" were acts expected from dogs, and would not have given the landlord actual notice of the dog's vicious propensities.  (*Yuzon, supra*, at p. 164.)  The court stated, "[e]ven if we were to assume that Collins knew that [the dog] ran through open doors and scared the neighbors, his actual knowledge of [the dog's] vicious propensities may not be inferred unless the circumstances were such that

11

he must have known, and not just should have known, of the dog's vicious nature." (*Ibid*.)

The *Yuzon* court distinguished another case, *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, where a grant of summary judgment in favor of a landlord was reversed because "the tenant's dogs displayed vicious propensities that would have been apparent to anyone, including the landlord, who regularly visited the property." (*Yuzon, supra*, at pp. 164-165.)

Here, the facts align with the *Yuzon* case, demonstrating the trial court properly granted summary judgment. Pang's best evidence in the record showed that the Yanos knew Thim kept dogs at the house he rented from the Yanos based on the declarations of both Steven and Susan, each of whom acknowledged that they knew there were dogs at their property. Specifically, Steven declared that he saw the dogs on occasion through the windows of the house when he did maintenance work outside the house. Susan declared that she heard the dogs on occasion barking in the house, and that she generally knew pit bulls bite. However, Steven and Susan's deposition testimony and declarations offered in support of their MSJ showed that neither had ever "heard about" Thim's dogs "demonstrating any vicious tendencies towards a person," and that neither had ever "seen" the dogs "acting vicious towards another person." Further, Thim never indicated to them that his dogs had vicious tendencies.

We find there is no disputed issue of fact as to the Yanos' actual knowledge of the vicious tendencies of Thim's dogs. Steven testified at his deposition that he visited the home he rented to Thim only once a year. Pang's evidence showed that the dogs acted viciously toward *him* when he would visit his father's house, including attempting to jump over the fence to get at Pang. The evidence showing that Thim's dogs regularly acted viciously toward Pang is insufficient to call into question the credibility of the Yanos' evidence that *they* had no actual acknowledge of a problem, that is, that they never heard that Thim's dogs had vicious tendencies and that they never saw Thim's dogs acting with vicious tendencies. Pang's evidence did not show that he ever told the Yanos about the dogs' actions.

12

Because the Yanos' MSJ as it concerned Pang's negligence claim was based on the defense that they did not have actual knowledge of the vicious tendencies of Thim's dogs, and because there is no evidence creating a dispute as to this fact, the MSJ was properly granted.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded costs on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.


FLIER, J.


13